1   BREMER WHYTE BROWN & O'MEARA LLP
    Keith G. Bremer, State Bar No. 155920
2   kbremer@bremerwhyte.com
    Benjamin Price, State Bar No. 267400
3   bprice@bremerwhyte.com
    Olivia Zorayan, State Bar No. 352064
4   ozorayan@bremerwhyte.com
    20320 S.W. Birch Street
5   Second Floor
    Newport Beach, California 92660
6   Telephone:  (949) 221-1000
    Facsimile:   (949) 221-1001
7
8   KNOBBE MARTENS, OLSON & BEAR, LLP
    Steven J. Nataupsky, State Bar No. 155913
9   steven.nataupsky@knobbe.com
    2040 Main Street
10  14th Floor
    Irvine, CA 92614
11  Telephone: 949-760-0404
12  Attorneys for Plaintiff,
    LOST INTERNATIONAL, LLC, a California
13  limited liability company

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16

17  LOST INTERNATIONAL, LLC, a        )  Case No.: 8:25-cv-00592 FMO
    California limited liability company,  )  (KESx)
18                                     )
            Plaintiff,                 )
19                                     )  Judge:   Hon. Fernando M. Olguin
        v.                             )
20                                     )  **PLAINTIFF'S MOTION FOR**
    STEFANI JOANNE ANGELINA            )  **PRELIMINARY INJUNCTION;**
21  GERMANOTTA aka LADY GAGA, an       )  **MEMORANDUM OF POINTS**
    individual; and DOES 1 through 100, )  **AND AUTHORITIES IN**
22  inclusive,                         )  **SUPPORT THEREOF**
                                       )
23          Defendant.                 )  Date: June 5, 2025
    _____)  Time: 10:00 a.m.
24                                        Complaint Filed:  March 25. 2025
25

26

27

28

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

3430.067

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1

II. FACTUAL BACKGROUND ..............................................................................2

    A. Lost's Registered and Common Law Trademark Rights ...........................3

    B. Lady Gaga's Use of the Mark Without Permission....................................4

    C. Lady Gaga's Use does not Align With Lost's Morals and Values ................................................................................................................6

    D. Lost has Diligently Attempted to Resolve This Dispute Outside of Court .............................................................................................7

III. LEGAL STANDARD ........................................................................................7

IV. ARGUMENT .....................................................................................................9

    A. Lost is Likely to Succeed on the Merits of its Trademark Infringement and False Designation of Origin Claims .........................9

        1. Lost has Valid and Protectable Rights in the "Mayhem" Mark ..................................................................................................10

        2. There is a Likelihood of Reverse Confusion Based on Lady Gaga's Actual Use and Based on the Context of the Use ...................................................................................................10

            a. Lost's MAYHEM® Mark is Strong ......................................12

            b. Lady Gaga's Mark is Identical or Strikingly Similar to the Mark..........................................................14

            c. The Parties' Goods are Identical and Closely Related .....................................................................................15

            d. The Likelihood of Reverse Public Confusion is Substantial and Actual Confusion has Already Occurred .................................................................................15

            e. The Parties' Marketing Channels Overlap...........................17

            f. There is a Strong Likelihood of Expansion of Product Lines..............................................................................17

    B. At Minimum, a Preliminary Injunction is Warranted Because There are Serious Questions Going to the Merits and the Remaining Winter Factors Weigh Sharply in Lost's Favor ...............18

        1. Absent Injunctive Relief, Lost Will Suffer Irreparable Harm ......................................................................................18

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

i

3430.067

1

**TABLE OF CONTENTS (cont.)**

2

<u>**Page**</u>

3

     2. The Balance of Hardship Strongly Weighs in Lost's
        Favor ...................................................................................20

4

     3. An Injunction Would Serve the Public's Interest ............................22

5

     4. No Bond Should be Required ..........................................................23

6

V. CONCLUSION..................................................................................24

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

ii

3430.067

1

## <u>TABLE OF AUTHORITIES</u>

2
<u>Page(s)</u>

3
<u>Cases</u>

4
*Alixir Co. v. Qué Onda Beverage, Inc.*, No. 2:20-cv-08368-RGK
5
(RAOx), 2021 WL 971057, at *6 (C.D. Cal. Jan. 6, 2021) ............................ 9

6
*AMF, Inc. v. Sleekcraft Boats*, 174 F.3d at 1052 n.15 (9th Cir. 1979).................... 11

7
*Aurora World v. Ty, Inc.*, 719 F. Supp. 2d 1115, 1156 (C.D. Cal. 2009) ............... 11

*Beer Nuts v. Clover Club Foods Co.*, 805 F.2d 920, 928 (10th Cir. 1986)............. 16
8
*Berg* v. *Cnty. of Los Angeles*, 2021 WL 4691154, at *2 n.3 (C.D. Cal.
9
May 28, 2021) ...................................................................... 9

10
*Brookfield Commc'ns*, 174 F.3d at 1058. ........................................................ 13

11
*Brookfield Commc'ns*, 174 F.3d at 1066 ........................................................ 22

12
*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036,
1054 (9th Cir. 1999) ............................................................ 11
13
*Brookfield Comms. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1066 (9th
14
Cir. 1999).......................................................................... 23

15
*Cisco Sys. v. Wuhan Wolon Commc'n Tech. Co.*, No. 5:21-cv-04272-
EJD, 2021 WL 4962661, at *7 (N.D. Cal. July 23, 2021) .............................. 8
16
*Cisco Sys.*, 2020 WL 5199434, at *6........................................................ 18
17
*Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*, 2020 WL 5199434, at
18
*6 (N.D. Cal. Aug. 17, 2020) ........................................................ 8

19
*Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) ................................ 9

20
*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 924 F. Supp. 1559,
1574 (S.D. Cal. 1996)............................................................ 20
21
22
*Dreamwerks Pro. Grp. v. SKG Studio*, 142 F.3d 1127, 1128 (9th Cir.
2009).......................................................................... 10, 15
23
*Dreamwerks Prod. Grp. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir.
1998)......................................................................... 12, 13
24
25
*Dreamwerks Production Group v. SKG Studio*142 F.3d 1127 (9th Cir.
2009).......................................................................... 11
26
*Dreamwerks Production Group v. SKG Studio*142 F.3d 1127 at 1130
(9th Cir. 2009) ................................................................. 21
27
*eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal.
28
2000)......................................................................... 20

iii

3430.067

1

# TABLE OF AUTHORITIES (cont.)

2                                                                              **Page(s)**

3  *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1038 (9th Cir. 14 2003) ................ 18

4  *Fortune Dynamic*, 618 F.3d at 1032 .......................................................................... 14

5  *Fortune Dynamic*, 618 F.3d at 1033) ....................................................................... 13

6  *Fortune Dynamic, Inc. v. Victoria Secret Stores Brand Mgmt., Inc.*, 618
       F.3d 1025, 1030 (9th Cir. 2010) ...................................................................... 12
7

8  *Friends of the Wild Swan* v. *Weber*, 767 F.3d 936, 942 (9th Cir. 2014) ................... 8

   *Fuddruckers, Inc.* v. *Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th
9      Cir. 1987) .......................................................................................................... 9

10 *Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 986 (C.D. Cal. 2002) ................. 12

11 *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000) ............. 12

12 *Grupo Bimbo, S.A.B. de C.V.* v. *Snak-King, Corp.*, 2013 WL 12133892,
       at *7 (C.D. Cal. July 22, 2013) ....................................................................... 13
13

   *Gucci Am., Inc.* v. *Los Altos Boots, Inc.*, 2014 WL 12561613, at *7
14     (C.D. Cal. Aug. 27, 2014) ............................................................................... 19

15 *Gucci*, 2014 WL 12561613, at *7 ............................................................................ 20

16 *Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239,
       1250 (9th Cir. 2013) ........................................................................................ 19
17

18 *Idaho* v. *Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015) ....................... 8

   *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) ........................ 10
19

20 *JL Beverage Co.*, 828 F.3d at 1107 ......................................................................... 13

   *JL Beverage Co.*, 828 F.3d at 1109 ......................................................................... 14
21

22 *JL Beverage Co.*, 838 F.3d at 1111 ......................................................................... 16

   *JL Beverage Co., LLC, v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106
23     (9th Cir. 2016) ................................................................................................. 12

24 *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) .................................. 23

25 *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ................................... 23

26 *Kahala Franchising, LLC v. Real Faith, LLC*, 2022 WL 1605377, at *4
       (C.D. Cal. May 20, 2022) ................................................................................ 18
27

28 *Kreation Juicery, Inc. v. Shekarchi*, 2014 WL 7564679, at *12 (C.D.
       Cal. Sept. 17, 2014) ........................................................................................ 20

iv

1

## TABLE OF AUTHORITIES (cont.)

2

**Page(s)**

3  *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1196 (9th Cir. 2009) ................................ 9

4  *layboy Enters., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1275 (9th
5        Cir. 1982) ............................................................................................................ 22

6  *Morningside Group Ltd. V. Morningside Capital Group*, 182 F.3d 133
        (2d Cir. 1999) .................................................................................................... 17

7  *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d
8        1137, 1149 (9th Cir. 2011) ................................................................................ 13

9  *Ocean Garden, Inc.* v. *Marktrade Co.*, 953 F.2d 500, 506 (9th Cir.
        1991) .................................................................................................................. 13

10 *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1075 (C.D.
11       Cal. 2004) .......................................................................................................... 22

12 *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) ................ 10

13 *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1212 (9th Cir.
        2012) .................................................................................................................. 15

14 *Sleekcraft*, 599 F.2d at 350 ...................................................................................... 15

15 *Steinway & Sons v. Robert Demars & Friends*, 1981 WL 40530, at *8
16       (C.D. Cal. Jan. 28, 1981) ................................................................................... 20

17 *Tari Labs, LLC v. Lightning Labs, Inc.*, 2023 WL 2480739, at *12 ...................... 23

18 *Thane Intern. Inc. v. Trek Bicycle Corp.*, 305 F.3d 894 (9th Cir. 2002) ................. 17

19 *U.S. Olympic Comm. v. Xclusive Leisure & Hosp. Ltd.*, 2008 WL
        3971120, at *10 (N.D. Cal. Aug. 25, 2008) ...................................................... 20

20 *Vertos Med., Inc.* v. *Globus Med., Inc.*, 2009 WL 3740709, at *6
21       (N.D. Cal. Nov. 6, 2009) .................................................................................... 15

22 *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n.3 (9th Cir.
        1989) .................................................................................................................... 8

23 *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ............................ 8

24 *Winter*, 555 U.S. at 29 ............................................................................................... 20

25 **Statutes**

26 15 U.S.C. § 1065 ...................................................................................................... 10

27 15 U.S.C. § 1114(1) ................................................................................................... 9

28 15 U.S.C. § 1115(b) .................................................................................................. 10

v

3430.067

# TABLE OF AUTHORITIES (cont.)

**Page(s)**

15 U.S.C. § 1116 .................................................................................................. 18

15 U.S.C. § 1116(a) ............................................................................................ 18

California Business and Professions Code [section] 17200 ........................................ 9

**Rules**

Fed. R. Civ. P. 65(b) .......................................................................................... 8

Fed. R. Civ. P. 65(c) .......................................................................................... 23

3430.067

1 <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2 **I.   INTRODUCTION**

3      This Motion for a preliminary injunction arises from Defendant STEFANI

4 JOANNE ANGELINA GERMANOTTA aka LADY GAGA's ("Lady Gaga")

5 blatant disregard of Plaintiff LOST INTERNATIONAL, LLC's ("Lost") rights to its

6 registered trademark MAYHEM® (the "Mark"). Lady Gaga is improperly and

7 without Lost's permission selling clothing and headwear bearing the Mark with a

8 confusingly similar stylization in support of her new album titled "Mayhem" and

9 upcoming world tour. Lady Gaga's highly publicized use of the Mark is likely to

10 cause and has already caused significant confusion among Lost's customers which is

11 detrimental to its brand and reputation in the core surf community that is grounded in

12 standing apart from the mainstream, in direct contradiction to Lady Gaga's image. In

13 fact, consumers are already considering distancing themselves from MAYHEM®,

14 including one who made an Instagram comment stating he will never wear his

15 MAYHEM® shirt again if he gets mistaken for a Lady Gaga fan. Price Decl. ¶ 14,

16 Ex. O.

17      Lady Gaga is a world-famous entertainer and entrepreneur with millions of

18 devoted fans, celebrated for her influential and award-winning presence in the film

19 and music industries. Lost is a well-known surf and lifestyle brand established in

20 1985 that has been using the Mark since 1986 in connection with surfboards, surf

21 equipment, clothing, accessories, and surf videos. Having used the Mark in

22 commerce for *over three (3) decades*, the Mark has become strongly associated with

23 Lost as a brand as well as the merchandise, athletes, and message it endorses or

24 sponsors.

25      For Lady Gaga, "Mayhem" is merely a moment in time and a temporary

26 priority for Lady's Gaga's fluid brand and shifting identity, while for Lost,

27 MAYHEM® is its entire brand and has been since Lost's inception over three (3)

28 decades ago. While Lady Gaga will undoubtedly move onto her next successful

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

3430.067

1 project, Lost's reputation will be irreparably damaged because its entire
2 MAYHEM® brand and identity will have been consumed by Lady Gaga's
3 guaranteed success and dominant influence. Unless Lady Gaga is enjoined from
4 using the Mark, the consuming public will see the word "Mayhem" and think of
5 Lady Gaga, and not the smaller surf company that coined the iconic Mark.

6        Through this Motion, Lost seeks preliminary relief enjoining Lady Gaga from
7 marketing and selling clothing and headwear that bear the infringing "MAYHEM"
8 Mark that are likely to cause and have already caused confusion among Lost's
9 customers and irreparable injury to Lost, jeopardizing its brand, reputation and
10 goodwill. Lady Gaga's conduct continues to inflict irreparable injuries upon Lost.
11 Lost is likely to succeed on the merits of these claims, and the balance of hardships
12 and public interest favor an injunction. As set forth below, Lost also easily satisfies
13 the other preliminary injunction factors. For these reasons, the Court should grant
14 this Motion and enjoin Lady Gaga from further infringement of the Mark.

15 **II.    FACTUAL BACKGROUND**

16        Lost sells a variety of surf apparel and accessories, including board shorts,
17 tees, woven shirts, headwear, and more. Mayhem is the nickname of Matt Biolos,
18 one of the co-founders of Lost. Declaration of Matt Biolos ("Biolos Decl.") ¶ 5;
19 Declaration of Mike Reola ("Reola Decl.") ¶ 5. Matt Biolos allows Lost and
20 MRMB-2, Inc. (hereinafter "Lost") to use his nickname on their products.[1] Biolos
21 Decl. ¶ 6; Reola Decl. ¶ 6. Lost began using the Mark in 1986 in relation to
22 surfboards, surf equipment, clothing, accessories, and surf videos, and has been using
23 the Mark in commerce in the United States continuously since at least as early as
24 January 1992. Biolos Decl. ¶ 7; Reola Decl. ¶ 7. The Mark has become, through

25 _____

26 [1] MRMB-2, Inc. is a company owned by Matt Biolos and Mike Reola, who are also
part owners of Lost. The two entities have common ownership and commonly
27 control the high quality of MAYHEM® goods. Biolos Decl. ¶¶ 3-6; Reola Decl. ¶¶
3-6. MRMB-2 does business as "Lost Surfboards." Biolos Decl. ¶ 3; Reola Decl. ¶
28 3.

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

3430.067

widespread and favorable public acceptance and recognition, an asset of substantial value as a symbol of Lost, its quality products, and its goodwill. Biolos Decl. ¶ 14; Reola Decl. ¶ 14.

## A. Lost's Registered and Common Law Trademark Rights.

Lost is the registered owner of the incontestable federal trademark MAYHEM® which was registered in the United States on August 11, 2015, registration number 4,790,623. Biolos Decl. ¶ 8; Reola Decl. ¶ 8. The Mark is registered in International Class 25 and covers, "Beanies; Caps; Jackets; Pants; Sandals; Shorts; T-shirts; Tank tops." Biolos Decl. ¶ 8; Reola Decl. ¶ 8. A true and correct copy of the registration is attached as Exhibit A. The Mark was also registered by Lost in Japan on June 4, 1999, registration number 4279826. Biolos Decl. ¶ 8; Reola Decl. ¶ 8. MRMB-2 is also the owner of the registered trademark MAYHEM® as it relates to surfboards which was registered in the United States on August 13, 2013, registration number 4,382,416 and is in International Class 28: "Surfboards." Biolos Decl. ¶ 9; Reola Decl. ¶ 9.

Lost sells clothing and accessories with the Mark, often in a stylized form as depicted below (the "Stylized Mark"). See Biolos Decl. ¶¶ 10-11; Reola Decl. ¶¶ 10-11.




BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

3430.067

1  Lost's oldest item known with the Mark that is shockingly similar to Lady
2  Gaga's "Mayhem" logo is a sweatshirt manufactured in 1991.  Biolos Decl. ¶ 12;
3  Reola Decl. ¶ 12.

4  Lost has invested substantial time, effort, and financial resources promoting
5  the Mark in connection with the marketing and sale of its goods in interstate
6  commerce and the consuming public recognizes Lost's Mark and associates it with
7  Lost.  Biolos Decl. ¶ 14; Reola Decl. ¶ 14.

8  **B.**   **Lady Gaga's Use of the Mark Without Permission.**

9  Lady Gaga has unilaterally, and without Lost's permission or knowledge,
10 attempted to misappropriate the "Mayhem" name, trademark, and the stylized Mark.
11 Biolos Decl. ¶ 20; Reola Decl. ¶ 20; see Declaration of Benjamin Price ("Price
12 Decl.") ¶ 6.   On January 27, 2025 Lady Gaga announced a music album named
13 "Mayhem," which she released on March 7, 2025 and a worldwide tour under the
14 "Mayhem" name, which is scheduled to begin in the United States on July 16, 2025.
15 At some point prior to the release of the music album, Lady Gaga began selling t-
16 shirts and other items of clothing with the Mark prominently displayed, with a nearly
17 identical design as used by Lost on its own products  which are currently for sale on
18 Lady Gaga's official website.  See Price Decl. ¶ 3.

19 Additionally, Lady Gaga's "Mayhem" branded clothing is currently listed for
20 sale on Walmart.com.  Price Decl. ¶ 20.  As one of the largest retailers in the country,
21 Walmart's sale of clothing bearing the infringing "Mayhem" mark will only expedite
22 the irreparable harm to Lost's reputation, given Walmart's vast reach and nationwide
23 visibility.  Such widespread exposure by a retail powerhouse where Lost would never
24 agree to sell its MAYHEM® clothing, not only increases the likelihood of consumer
25 confusion, but also risks permanently diluting the distinctiveness of Lost's Mark and
26 undermining the goodwill it built over the years within its core surf community.  See
27 Biolos Decl. ¶¶ 17 - 18; Reola Decl. ¶¶ 17 - 18.  Below are a few of numerous

28

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

3430.067

1  "Mayhem" items listed on Walmart.com.  Price Decl. ¶ 20.



13      The Mark, "Mayhem" is almost identical on both Lady Gaga's merchandise
14  and Lost's.  Price Decl. ¶ 5.  The following are examples of Lady Gaga's clothing on
15  the left, with Lost's on the right.  See Price Decl. ¶ 4.




26      The following are the stylized marks isolated, with Lady Gaga's on the left,
27  with Lost's on the right.   See Price Decl. ¶ 5; Biolos Decl. ¶ 10; Reola Decl. ¶ 10.

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

3430.067

5

 

The Mark in stylized form on Lady Gaga's merchandise is substantially similar if not nearly identical to the Stylized Mark on Lost's merchandise. Price Decl. ¶ 5.

**C.    Lady Gaga's Use does not Align With Lost's Morals and Values.**

Lost's morals and values as an athletic lifestyle brand do not align with Lady Gaga's branding of her "Mayhem" album, as the album depicts a dark aesthetic with gothic influences, illustrated in the mainstream which is the opposite of Lost's brand. Biolos Decl. ¶ 23; Reola Decl. ¶ 23.

In an interview with InStyle magazine, Lady Gaga states, "I tell people that *MAYHEM* is a bunch of gothic dreams"  and that, "there is something kind of anxious at the heart" of the visuals of this album.  These values do not represent Lost, and Lost does not wish to be tied to the messages and imagery of Lady Gaga's "Mayhem" album.  See Biolos Decl. ¶ 24 ; Reola Decl. ¶ 24.

In addition, Lady Gaga is an international entertainer and pop-star who has sold approximately 70 million records globally and has 175 billion streams.  Any album or product she puts out will certainly gather the attention of the mainstream, and her new "Mayhem" campaign already has.

Conversely, Lost and its "Mayhem" Mark are recognized for their distinct connection to the niche surf counter-culture which is rooted in standing *apart* from the mainstream.  Biolos Decl. ¶ 15; Reola Decl. ¶ 15.  Lost sells about 35,000 surfboards per year internationally.  Lost's surf boards have won two Olympic gold medals and received numerous other awards for their world-renowned surfboard

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

3430.067

technology and design.  Biolos Decl. ¶ 16; Reola Decl. ¶ 16.  However, Lost purposefully limits the distribution of MAYHEM® merchandise to core retailers who sell LOST® surfboards and embody the niche culture, including companies like Pacific Sunwear of California, LLC a.k.a. PacSun.  Biolos Decl. ¶ 17; Reola Decl. ¶ 17.  Lost has turned down offers to sell MAYHEM® clothing from many large commercial retailers including Costco, Ross, Big 5 Sporting Goods and Marshalls because selling merchandise outside of its core audience would undermine its credibility among the surf community.  Widespread distribution of the Mark outside of the surf core community would dilute the brand and distance Lost's target demographic.  Biolos Decl. ¶ 18; Reola Decl. ¶ 18.  For these reasons, Lost's association with Lady Gaga and her mainstream brand would be detrimental to its image and irreparably damage Lost and the MAYHEM® brand.

### D.     Lost has Diligently Attempted to Resolve This Dispute Outside of Court.

Lost first learned of Lady Gaga's unauthorized use of the Mark through Lady Gaga's online promotion of her new album.  Prior to this action, Lost sent correspondence to Lady Gaga on March 11, 2025 requesting in writing that Lady Gaga cease and desist from her infringing actions.  In response, Lady Gaga's counsel simply dismissed Lost's claim, indicating that Lost has "vastly overstated" its rights to the term, "Mayhem."  See Price Decl. ¶¶ 8-9; Price Exhibits I-J.

To date, Lost has not received any indication that Lady Gaga intends to cease use of the Mark.  See Price Decl. ¶ 11.  In fact, Lady Gaga's "Mayhem" branded merchandise bearing the confusingly similar stylization is now being sold in Walmart, one of the largest retail stores in the country.  Biolos Decl. ¶ 22; Reola Decl. ¶ 22; Price Decl. ¶ 20.

## III.   LEGAL STANDARD

A court may grant preliminary injunctive relief to prevent "immediate and

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

3430.067

7

irreparable injury." Fed. R. Civ. P. 65(b).  A plaintiff seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) a likelihood that it will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) an injunction is in the public interest.  *See Idaho* v. *Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015) (internal quotation marks omitted); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  In the Ninth Circuit, "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan* v. *Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (cleaned up and emphasis removed).

Preliminary injunctions are "routinely granted" in trademark infringement cases based on the "well-settled" and "universally recognized" principle that "trademark infringement causes irreparable injury and necessitates immediate injunctive relief."  *Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*, 2020 WL 5199434, at *6 (N.D. Cal. Aug. 17, 2020).

Under the Trademark Modernization Act of 2020, a plaintiff seeking an injunction to prevent trademark infringement is entitled to a rebuttable presumption of irreparable harm upon a finding of likelihood of success on the merits.  *Cisco Sys. v. Wuhan Wolon Commc'n Tech. Co.*, No. 5:21-cv-04272-EJD, 2021 WL 4962661, at *7 (N.D. Cal. July 23, 2021); *cf. Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n.3 (9th Cir. 1989) ("In trademark infringement or unfair competition actions, once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted").

"In the trademark context, 'state common law claims of unfair competition and

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

3430.067

1   actions pursuant to the California Business and Professions Code [section] 17200 are
2   substantially congruent to claims made under the Lanham Act." *Alixir Co. v. Qué*
3   *Onda Beverage, Inc.*, No. 2:20-cv-08368-RGK (RAOx), 2021 WL 971057, at *6
4   (C.D. Cal. Jan. 6, 2021) (quoting *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th
5   Cir. 1994)).

6       Plaintiffs may provide a broad range of evidence to support an injunction and
7   "may give even inadmissible evidence some weight, when to do so serves [the]
8   purpose of preventing irreparable harm before trial." *Berg* v. *Cnty. of Los Angeles*,
9   2021 WL 4691154, at *2 n.3 (C.D. Cal. May 28, 2021) (citation omitted). And to
10  prevail on a trademark infringement claim, the plaintiff must establish that (1) it has
11  a valid, protectable trademark; and (2) the alleged infringer's use of the same or a
12  similar mark causes a likelihood of confusion in the minds of the relevant consuming
13  public. *Fuddruckers, Inc.* v. *Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir.
14  1987).

15  **IV.   ARGUMENT**

16      All of the necessary factors for preliminary injunctive relief are satisfied in this
17  case. Each factor is addressed below.

18      **A.   Lost is Likely to Succeed on the Merits of its Trademark**
19          **Infringement and False Designation of Origin Claims.**

20      Lost is likely to succeed on its claims for trademark infringement and false
21  designation of origin under sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§
22  1114 and 1125(a), because it has valid, protectable rights in the Mark and because
23  Lady Gaga's unauthorized use of the Mark is likely to cause confusion as to the
24  source, sponsorship, or affiliation of the products in the marketplace. *See Lahoti v.*
25  *VeriCheck, Inc.*, 586 F.3d 1190, 1196 (9th Cir. 2009); *see also* 15 U.S.C. § 1114(1).
26  The "critical determination" is whether Lady Gaga's use of the Mark "creates a
27  likelihood that the consuming public will be confused as to who makes what

28

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

3430.067

9

product." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) (internal quotation marks and citations omitted).

### 1. Lost has Valid and Protectable Rights in the "Mayhem" Mark.

Lost owns the registered trademark, which is incontestable pursuant to Section 15 of the Lanham Act, *see* 15 U.S.C. § 1065, as well as common law trademark rights dating back to at least as early as 1992.  The Mark is valid and protectable.  As an initial matter, "[r]egistration of a mark is prima facie evidence of the validity of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to use the mark in connection with the goods specified in the registration." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (citing 15 U.S.C. § 1115(a)).

The ownership interest element is met because Lost's registered mark is "incontestable" based on its longstanding use and registration, and Lost's filing of a Declaration of Incontestability on August 3, 2021.  *See* 15 U.S.C. § 1065; Price Exs. A-C (including incontestability declarations and acknowledgments from U.S. Trademark Office).  This is conclusive evidence that the Mark is distinctive and valid.  *See* 15 U.S.C. § 1115(b).

Lost's registered mark covers a goods in Class 25 including but not limited to, "clothing, namely, tee-shirts, sweatshirts, sweatpants, hats, . . . tank-tops, and shorts."  Price Exs. A-C.  Lady Gaga's use of the Mark is precisely in connection with clothing items in Class 25.

### 2. There is a Likelihood of Reverse Confusion Based on Lady Gaga's Actual Use and Based on the Context of the Use.

In an infringement case involving "forward" confusion, a more well-known senior mark suggests greater likelihood of confusion because a junior user's mark is more likely to be associated with a famous mark. *Dreamwerks Pro. Grp. v. SKG*

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

3430.067

1  *Studio*, 142 F.3d 1127, 1128 (9th Cir. 2009).  In a reverse confusion case, such as
2  this one, the court must focus on the strength of the junior user's mark.  *Id*.  The
3  question in such cases is whether consumers doing business with the senior user
4  might mistakenly believe that they are dealing with the more famous junior user.  *Id*
5  at 1130.  The more widely renowned a junior user's mark is, the more likely it is to
6  do harm to the senior user.  *See id* at 1130.  The Court in *Dreamwerks Production*
7  *Group v. SKG Studio*142 F.3d 1127 (9th Cir. 2009) ("*Dreamwerks*") noted that if the
8  circumstances were reversed, and the well-known DreamWorks production
9  company's mark was the senior user, then there would be little doubt that
10  DreamWorks would have stated a case for infringement.  *Id*.  The Court further held
11  that the result does not change in a reverse confusion case where the well-known
12  mark is the junior mark. *Id*.

13      The test for likelihood of confusion is whether a "reasonably prudent
14  consumer" in the marketplace is likely to be confused as to the origin of the good or
15  service bearing one of the marks.  *Id* at 1129.  The Ninth Circuit weighs the eight
16  *Sleekcraft* factors in evaluating whether an allegedly infringing mark is likely to
17  cause confusion in the marketplace: (a) strength of the mark; (b) similarity of the
18  marks; (c) proximity or relatedness of the goods; (d) evidence of actual confusion;
19  (e) marketing channels used; (f) types of goods and degree of care likely to be
20  exercised by the consumer; (g) Defendant's intent to select the mark; and (h)
21  likelihood of expansion of product lines.  *AMF, Inc. v. Sleekcraft Boats*, 174 F.3d at
22  1052 n.15 (9th Cir. 1979).

23      The Court is not required to address all of the factors, nor do Plaintiffs need to
24  prevail on every one.  *See Aurora World v. Ty, Inc.*, 719 F. Supp. 2d 1115, 1156
25  (C.D. Cal. 2009) (court need not consider all the *Sleekcraft* factors at the preliminary
26  injunction stage).  "It is often possible to reach a conclusion . . . after considering
27  only a subset of the factors."  *Brookfield Commc'ns, Inc. v. W. Coast Ent't Corp.*,
28

11

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000
3430.067

1  174 F.3d 1036, 1054 (9th Cir. 1999); *see Fortune Dynamic, Inc. v. Victoria Secret*
2  *Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010) ("This eight-factor
3  analysis is 'pliant,' illustrative rather than exhaustive, and best understood as simply
4  providing helpful guideposts."). Certainly, "[s]ome of the *Sleekcraft* factors will be
5  more important in certain contexts than in others." *Glow Indus., Inc. v. Lopez*, 252 F.
6  Supp. 2d 962, 986 (C.D. Cal. 2002). Three of the Sleekcraft factors are pivotal in
7  this reverse confusion context, as they were in *Dreamwerks*: (1) arbitrariness of the
8  mark; (2) similarity of sight, sound and meaning; and (3) relatedness of the goods.
9  *Dreamwerks Prod. Grp. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir. 1998).

10      In the usual infringement case, these factors are applied to determine whether
11  the junior user is attempting to falsely designate the origin of its products as those of
12  the senior user. *Id*. In a reverse infringement case, there is no question of palming
13  off, since neither junior nor senior user wishes to siphon off the other's goodwill.
14  The question in such cases is whether consumers doing business with the senior user
15  might mistakenly believe that they are dealing with the junior user. *Id.*

16      Here, all eight factors point to a strong likelihood of confusion and illustrate
17  that customers will see Lost's Mark and mistakenly believe it belongs to or is
18  associated with Lady Gaga.

19          **a.    Lost's MAYHEM® Mark is Strong.**

20      A mark's strength is measured in terms of its "conceptual strength" and
21  "commercial strength." *JL Beverage Co., LLC, v. Jim Beam Brands Co.*, 828 F.3d
22  1098, 1106 (9th Cir. 2016) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d
23  1199, 1207 (9th Cir. 2000)).

24      Conceptual strength refers to a mark that falls under the "spectrum of five
25  categories ranging from strongest to weakest: arbitrary, fanciful, suggestive,
26  descriptive, and generic." *Id*. at 1107. "Arbitrary and fanciful marks, which employ
27  words and phrases with no commonly understood connection to the product, are the

28

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

3430.067

1  two strongest categories, and trigger the highest degree of trademark protection." *Id*.

2  (internal quotation marks omitted).  "In the middle of the spectrum are suggestive

3  marks, which suggest a product's features and require consumers to exercise some

4  imagination to associate the suggestive mark with the product." *Id*. (citing *Fortune*

5  *Dynamic*, 618 F.3d at 1033).  "[U]nlike arbitrary or fanciful marks which are

6  typically strong, suggestive marks are presumptively weak." *Brookfield Commc'ns*,

7  174 F.3d at 1058.

8         Here, the Mark, "Mayhem" is arbitrary or fanciful.  The word or the Mark,

9  "Mayhem" has no "commonly understood connection" to surfer lifestyle clothing

10 outside of Lost's use of the Mark. *JL Beverage Co.*, 828 F.3d at 1107.  Just as the

11 Court in *Dreamwerks* held that the word "dream" is used in too many different ways

12 to suggest any particular meaning to the reasonable consumer, the word "mayhem"

13 also has too many uses to link any particular product or service. *Dreamwerks Prod.*

14 *Grp. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir. 1998).  Accordingly, the

15 *Dreamwerks* Court held that the Dreamwerks mark deserves broad protection, and so

16 too should MAYHEM®. *Id*.  Thus, based on the conceptual strength of the Mark,

17 the arbitrary or fanciful "Mayhem" Mark is presumptively strong.

18        Additionally, because the Mark ispresumed to be inherently distinctive, Lost is

19 entitled to the strongest scope of protection. *See Grupo Bimbo, S.A.B. de C.V.* v.

20 *Snak-King, Corp.*, 2013 WL 12133892, at *7 (C.D. Cal. July 22, 2013) (TAKIS

21 trademark was incontestable, "[t]hus, the TAKIS mark is likely at least suggestive

22 and therefore conceptually strong"); *Ocean Garden, Inc.* v. *Marktrade Co.*, 953 F.2d

23 500, 506 (9th Cir. 1991) (strong mark "will be afforded the widest ambit of

24 protection from infringing uses").

25        "Commercial strength 'is based on actual marketplace recognition.'" *JL*

26 *Beverage Co.*, 828 F.3d at 1107 (quoting *Network Automation, Inc. v. Advanced Sys.*

27 *Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011)).

28

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000
3430.067

13

1    Here, Lost's reputation, products, and consumer base have achieved actual

2    marketplace recognition, especially within the core surf community.  The Mark has

3    acquired strength by virtue of its 33 years of widespread use by Lost.  *See* Biolos

4    Decl. ¶¶ 13-14; Reola Decl. ¶¶ 13-14.  Approximately 35,000 MAYHEM®

5    surfboards are sold internationally per year and Lost collaborates with many of the

6    world's greatest surfers and largest brands including Monster Energy.  Biolos Decl. ¶

7    16; Reola Decl. ¶ 16.  MAYHEM® surfboards have won two Olympic gold medals

8    as well as numerous other awards for their world-renowned surfboard technology

9    and design.  Biolos Decl. ¶ 16; Reola Decl. ¶ 16.

10    The Mark is particularly strong with respect to the clothing industry, as Lost

11    has been using the Mark on its clothing in commerce since at least as early as 1992.

12    Lost's MAYHEM® apparel is sold in hundreds of surf shops around the world,

13    while still purposefully limiting its distribution to retailers that embody the niche surf

14    counter-culture.  Biolos Decl. ¶ 17; Reola Decl. ¶ 17.  Through Lost's substantial and

15    continuous use of the Mark in commerce, the Mark has become an asset of

16    substantial value as a symbol of Lost and the consuming public recognizes the Mark

17    and associates it with Lost.  *See* Biolos Decl. ¶ 14; Reola Decl. ¶ 14.

18    The Mark is both conceptually and commercially strong, and thus, the strength

19    of the Mark weighs in favor of finding a likelihood of consumer confusion.

20          **b.    Lady Gaga's Mark is Identical or Strikingly Similar to**
21          **the Mark.**

22    "Three principles guide a court in determining whether marks are similar." *JL*

23    *Beverage Co.*, 828 F.3d at 1109 (citing *Fortune Dynamic*, 618 F.3d at 1032).  "First,

24    similarity is best adjudged by appearance, sound, and meaning." *Id*.  (internal

25    quotation marks omitted).  "Second, the marks must be considered in their entirety

26    and as they appear in the marketplace." *Id*.  "Third, similarities are weighed more

27    heavily than differences." *Id*.

28

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

3430.067

1    Lady Gaga uses the word "Mayhem," which is the same word as the Mark.
2    Lady Gaga uses the word "Mayhem" in the same or strikingly similar stylization on
3    t-shirts and sweatshirts sold on her website.  "The greater the similarity between the
4    two marks, the greater the likelihood of confusion." *Vertos Med., Inc.* v. *Globus*
5    *Med., Inc.*, 2009 WL 3740709, at *6 (N.D. Cal. Nov. 6, 2009) (internal citation
6    omitted).  Thus, this factor shows a strong likelihood of confusion.

7                      **c.    The Parties' Goods are Identical and Closely Related.**

8    The test for related goods or services is whether the two products "would be
9    reasonably thought by the buying public to come from the same source if sold under
10   the same mark." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1212 (9th Cir.
11   2012) (quoting *Sleekcraft*, 599 F.2d at 348 n.10).  If the goods are related, "the danger
12   presented is that the public will mistakenly assume there is an association between
13   the producers of the related goods, though no such association exists." *Sleekcraft*,
14   599 F.2d at 350.

15   Lost sells MAYHEM® branded clothing including but not limited to tees,
16   sweatshirts and headwear, which are goods included in or closely related to its
17   registration.  Lady Gaga also sells "Mayhem" branded tees, sweatshirts and
18   headwear which are identical to the goods Lost sells.

19                      **d.    The Likelihood of Reverse Public Confusion is
20                      Substantial and Actual Confusion has Already
21                      Occurred.**

22   As discussed above, in a reverse confusion case such as this one where the
23   more famous mark is the junior mark, the question is whether consumers doing
24   business with the senior user might mistakenly believe that they are dealing with the
25   junior user. *Dreamwerks Pro. Grp. v. SKG Studio*, 142 F.3d 1127, 1128 (9th Cir.
26   2009).  Since Lady Gaga's use of the Mark began when she announced her new
27   album on January 27, 2025, over three decades *after* Lost's use of the Mark began,

28

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

3430.067

15

1  Lady Gaga's is the junior mark and Lost's is the senior.  Lady Gaga's actions are
2  likely to mislead the public into concluding that Lost's goods originate with or are
3  authorized by Lady Gaga, which will damage both Lost and the public.  Lost has no
4  control over the quality of goods sold by Lady Gaga and thus, has lost control over
5  its valuable goodwill.  Biolos Decl. ¶ 32; Reola Decl. ¶ 32.  Furthermore, there will
6  be additional confusion once Lady Gaga's tour begins in the United States as her use
7  of the Mark will reach more consumers.  However, evidence of actual confusion is
8  not necessary to show a likelihood of confusion.  *See JL Beverage Co.*, 838 F.3d at
9  1111; *see also Beer Nuts v. Clover Club Foods Co.*, 805 F.2d 920, 928 (10th Cir.
10 1986).

11      Nevertheless, consumers have already begun confusing Lost's Mark with Lady
12 Gaga's.  For example, a customer walked into one of Lost's retail distributors,
13 Suncoast Surf Shop in Florida, and pointed out a Lost MAYHEM® product asking
14 to see the "Lady Gaga" merchandise.  (Declaration of Jordan LeFevre on behalf of
15 Suncoast Surf Shop ¶¶ 6-7).  In addition, many consumers have left comments on
16 various social media posts, Reddit threads and online articles illustrating confusion
17 between the marks.  Price Decl. ¶¶ 10-14, Exs. K-O.  One commenter noticed that
18 Lady Gaga was wearing a "Mayhem" hat on a Saturday Night Live skit and thought
19 Lady Gaga was associated with Lost's co-owner, Matt Biolos.  Price Decl. ¶ 12, Ex.
20 L-M.  Other consumers left comments on a Reddit thread titled "Lady Gaga sued by
21 surf company for allegedly plagiarizing 'Mayhem' logo in $100 million lawsuit"
22 indcating that they thought Lady Gaga's sticker was on a surfboard and that a Lost
23 MAYHEM® t-shirt was a Lady Gaga shirt.  Price Decl. ¶¶ 10–11, Ex. K.

24      Finally, several of Lost's retail distributors have expressed serious concern
25 that Lady Gaga's use of the confusingly similar "Mayhem" mark will significantly
26 impact Lost's identity and reputation in a community that places high importance on
27 staying true to surf culture and setting itself apart from popular culture.

28

16

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

3430.067

1 (Declarations of Aqua East Surf Shop ¶ 4, Rider Shack ¶ 4, KCoast Surf Shop ¶ 4,

2 Hapa Boardshop¶ 4, Waialua Surf Shop ¶ 4, Surfside, Inc. ¶ 4, Surf City Surf Shop

3 ¶ 4, Brave New World ¶ 4, ET Surf Shop ¶ 4, South Coast Windansea Surf Shop ¶ 4,

4 Huntington Surf and Sport ¶ 4 and Real Watersports ¶ 4).

5      While not necessary to prove likelihood of confusion, where evidence of

6 actual confusion has been shown, the likelihood of confusion is actually increased.

7 See *Morningside Group Ltd. V. Morningside Capital Group*, 182 F.3d 133 (2d Cir.

8 1999).  Evidence of actual confusion "constitutes persuasive proof that future

9 confusion is likely." *Thane Intern. Inc. v. Trek Bicycle Corp*., 305 F.3d 894 (9th Cir.

10 2002).  Therefore, given the ample evidence, the liklihood of reverse confusion

11 between Lady Gaga's "Mayhem" products and Lost's is not only likely to ocurr but

12 actual confusion has already occurred, prior to her tour.

13                    **e.      The Parties' Marketing Channels Overlap.**

14      Under *Sleekcraft*, convergent marketing channels increase the likelihood of

15 confusion.  Both parties use the same marketing channels and are directed to the

16 same or similar audiences (retail consumers).  *See* Price Decl. ¶ 6.  Lady Gaga and

17 Lost use social media and other online media, websites, print advertising, press

18 releases, and direct sales efforts.  Like Lost, Lady Gaga has an online store where it

19 sells direct-to-consumer merchandise related to the Mayhem album.  Price Decl. ¶ 3.

20 Further, Lady Gaga's "Mayhem" branded merchandise including tees and

21 sweatshirts are already being sold in Walmart while Lost's MAYHEM® apparel is

22 sold in purposefully limited quantities at competing retailers and online websites

23 nationwide.  Price Decl. ¶ 18; Biolos Decl. ¶ 17, Reola Decl. ¶ 17.

24                    **f.      There is a Strong Likelihood of Expansion of Product
                              Lines.**
25

26      Based on Lady Gaga's prior practices, there is a strong likelihood that the

27 Mark may be used on additional products, such as tank tops and sweatpants as shown

28

17

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

3430.067

1    in Lady Gaga's online store for a previous album, "The Fame."  Price Decl. ¶ 3.

2    Unless enjoined, Lady Gaga will likely expand the infringement of the Mark, causing

3    additional confusion and harm to Lost.

4         **B.**      <u>**At Minimum, a Preliminary Injunction is Warranted Because**</u>

5              <u>**There are Serious Questions Going to the Merits and the Remaining**</u>
   <u>***Winter* Factors Weigh Sharply in Lost's Favor.**</u>

6

7           **1.**      **Absent Injunctive Relief, Lost Will Suffer Irreparable Harm.**

8         An injunction here temporarily preserves the status quo.  If Lady Gaga is

9    permitted to continue the sale of clothing with the Mark and reach a wider audience

10   through her concerts, she will cause irreparable harm to Lost, its overall brand and

11   reputation.  Under 15 U.S.C. § 1116, a trademark owner is presumed to be

12   irreparably harmed when it demonstrates a likelihood of success in proving

13   infringement.  *Kahala Franchising, LLC v. Real Faith, LLC*, 2022 WL 1605377, at

14   *4 (C.D. Cal. May 20, 2022) ("Given that [Plaintiff] demonstrates a likelihood of

15   success on its trademark infringement claim, [Plaintiff] is statutorily entitled to a

16   presumption of irreparable harm for the purposes of its request for a preliminary

17   injunction") (citing 15 U.S.C. § 1116(a)); *El Pollo Loco, Inc. v. Hashim*, 316 F.3d

18   1032, 1038 (9th Cir. 14 2003).  Under this presumption, "[p]reliminary injunctions

19   are routinely granted in cases involving trademark infringement."  *Cisco Sys.*, 2020

20   WL 5199434, at *6.

21        Even without such presumption, Lady Gaga's continued infringement will

22   cause actual and significant irreparable harm to Lost and the Mark.  The Mark will

23   forever be associated with an artist whose apparent messages and themes are

24   different to those embraced by Lost—causing it to lose value in the eyes of

25   consumers.

26        Lady Gaga is one of the world's most famous and best selling artists, with

27   over 170 million records sold.  Her accolades include 14 Grammy Awards, two

28

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

3430.067

1  Golden Globe Awards, 18 MTV Video Music Awards, and a recognition from the

2  Songwriters Hall of Fame in addition to her renown presence in the film and movie

3  industry.  She is undeniably categorized as a mainstream public figure, which

4  surfer's and Lost's target audience do not want to be associated with.  For example,

5  one customer left a comment on an Instagram post stating he will never wear his

6  MAYHEM® shirt again if he gets mistaken for a Lady Gaga fan: Stab Magazine

7  (@stab) INSTAGAM,

8  https://www.instagram.com/p/DHr5SW6PSv8/?igsh=NTc4MTIwNjQ2YQ== (last

9  visited May 2, 2025).  Price Decl. ¶ 14, Ex. O.

10       In fact, many surf lifestyle companies like Billabong, Quicksilver and Volcom

11  have been driven into bankruptcy because they sold their clothing at mainstream

12  stores, which pushed away their core surfer audience.  (Jonathan Limehouse,

13  *Billabong, Quiksilver and Volcom Stores to Close in USA After Operator Files for*

14  *Bankruptcy*, USA TODAY, Feb 7, 2025,

15  https://www.usatoday.com/story/money/2025/02/07/billabong-quiksilver-volcom-

16  stores-closing-bankruptcy/78300026007/ (last visited May 2, 2025); Price Decl. ¶ 19.

17  This is one reason why Lost prioritizes the core surf community and purposefully

18  limits the distribution of MAYHEM® merchandise to retailers who sell their

19  surfboards and embody the niche surf counter-culture as opposed to mainstream

20  popular culture.  Biolos Decl. ¶ 17; Reola Decl. ¶ 17.

21       Lost's harm will be exacerbated by Lady Gaga's nationwide concert tour,

22  which will certainly erode and tarnish Lost's carefully built brand and goodwill.  *See*

23  *Gucci Am., Inc.* v. *Los Altos Boots, Inc.*, 2014 WL 12561613, at *7 (C.D. Cal. Aug.

24  27, 2014) ("'Evidence of a loss of control over business reputation and damage to

25  goodwill may be sufficient to show irreparable harm."), *citing Herb Reed Enters.,*

26  *LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013).  As Lady

27  Gaga's Mayhem album gains more media attention, the false associations with the

28

19

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

3430.067

1  Mark will only increase.  The increased affiliation between Lost and Lady Gaga's

2  gothic messages may even hinder Lost's ability to recruit athletes and acquire

3  investors who are reflective of its mission and values.

4       Further, Lady Gaga's continued use of the Mark will prevent Lost from having

5  active control over the narratives associated with its reputation.  Certainly, the fact

6  that "plaintiff has had the symbol of its reputation placed in the hands of another is

7  irreparable injury."  *Steinway & Sons v. Robert Demars & Friends*, 1981 WL 40530,

8  at *8 (C.D. Cal. Jan. 28, 1981) (internal quotations omitted); *see eBay, Inc. v.*

9  *Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000).

10       **2.    The Balance of Hardship Strongly Weighs in Lost's Favor.**

11       "[C]ourts must balance the competing claims of injury and consider the effect

12  of granting or withholding the requested relief."  *Winter*, 555 U.S. at 29.  Here, the

13  balance weighs sharply in Lost's favor as Lady Gaga is unlikely to suffer any unfair

14  harm or hardship.  "[W]here the only hardship that the defendant will suffer is lost

15  profits from an activity which has been shown likely to be infringing, such an

16  argument in defense merits little equitable consideration." *Gucci*, 2014 WL

17  12561613, at *7 (quoting *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 924 F.

18  Supp.  1559, 1574 (S.D. Cal. 1996) aff'd, 109 F.3d 1394 (9th Cir. 1997)).  Plainly,

19  "any injury that Defendants may suffer as a result of the preliminary injunction may

20  be discounted by the fact that Defendants brought the injury upon themselves by

21  intentionally adopting a deceptively similar trademark to Plaintiff's."  *Kreation*

22  *Juicery, Inc. v. Shekarchi*, 2014 WL 7564679, at *12 (C.D. Cal. Sept. 17, 2014)

23  (internal quotations omitted).  As Lady Gaga has no legitimate interest in infringing

24  the Mark, any "harm" resulting to her from a preliminary injunction, including

25  economic harm, should be discounted.  *See, e.g., U.S. Olympic Comm. v. Xclusive*

26  *Leisure & Hosp. Ltd.*, 2008 WL 3971120, at *10 (N.D. Cal. Aug. 25, 2008) ("Where

27  the intent to infringe is clear, even if the defendant's entire business was built upon

28

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

3430.067

20

1    the infringing mark, the balance of hardships weighs in favor of the plaintiff.").

2          Lady Gaga is a multimillionaire with 256.3 million fans across various

3    platforms and has successfully expanded her influence beyond music, establishing

4    herself as a multifaceted businesswoman.  Beyond music and entertainment, Lady

5    Gaga's business ventures include her cosmetics brand Haus Labs, her mental health

6    nonprofit Born This Way Foundation, and various branded merchandise lines tied to

7    her public persona.  Price Decl. ¶¶ 16 – 17.  Lady Gaga's undeniable talent, influence

8    and fame will allow her to be successful in anything she does, regardless of the mark

9    she uses on her ancillary tour merchandise, while Lost will suffer destruction of its

10    MAYHEM® brand and identity if Lady Gaga is not enjoined from using the Mark.

11    According to the *Dreamwerks* case, the more widely renowned a junior user's mark

12    is, the more likely it is to do harm to the senior user.  *Dreamwerks Production Group*

13    *v. SKG Studio* 142 F.3d 1127 at 1130 (9th Cir. 2009).  Lady Gaga certainly has

14    significantly more reach than Lost, and as a result the harm to Lost as the senior user

15    is dramatically more likely.

16          For Lady Gaga, her "Mayhem" album in merely a moment in time, which is at

17    the forefront of her image now, but is a temporary priority that will fade into the

18    background of her resume once she moves onto her next big project.  Conversely for

19    Lost, MAYHEM® is a critical brand and has been Lost's since inception over three

20    (3) decades ago.  While Lady Gaga will undoubtedly move onto her next successful

21    album or movie after her tour, Lost's reputation will be destroyed because its entire

22    MAYHEM® brand and identity will have been consumed by Lady Gaga's fame,

23    success and dominant influence.

24          If Lady Gaga removes the Mark from her merchandise, Lady Gaga may

25    commence her concert tour without a delay and continue the sale of clothing.  There

26    is sufficient time for Lady Gaga to remove the infringing mark from her tour

27

28

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

3430.067

1  merchandise for sale at her concerts.  In fact, many of her products, depicted below,

2  contain different marks that do not infringe Lost's.  Price Decl. ¶ 15, Ex. P.

 

11      Thus, there is no significant harm to Lady Gaga.  Conversely, if no preliminary

12  injunction is issued, Lost will suffer significant intangible injuries and irreparable

13  harm, as described above.  The harm caused by the unwanted association of Lost's

14  brand and image with Lady Gaga and the messages and imagery depicted in the

15  Mayhem album will be irreversible.  Therefore, the balance of hardships, and the

16  preservation of the status quo, strongly favor immediate injunctive relief.

17      **3.  An Injunction Would Serve the Public's Interest.**

18      The public has an "interest in protecting trademarks."  *Brookfield Commc'ns*,

19  174 F.3d at 1066.  Public policy favors an injunction when there is a likelihood of

20  confusion, as there is here.  *See Playboy Enters., Inc. v. Baccarat Clothing Co.*, 692

21  F.2d 1272, 1275 (9th Cir. 1982) ("In addition to the harm caused the trademark

22  owner, the consuming public is equally injured by an inadequate judicial response to

23  trademark infringement.").  The Ninth Circuit has determined that "it is essential that

24  the trial courts carefully fashion remedies which will take all the economic incentive

25  out of trademark infringement."  *Id*.  Additionally, the public has an interest in "not

26  being confus[ed] by infringing products."  *Phillip Morris USA Inc. v. Shalabi*, 352 F.

27  Supp. 2d 1067, 1075 (C.D. Cal. 2004).  "Preliminary injunctive relief is appropriate

28

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

3430.067

1   here . . . to promote the public interest in protecting trademarks generally as well."

2   *Brookfield Comms. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999).

3   There is also a public interest in protecting a smaller enterprise against the

4   abuse of power of a bigger enterprise.  For an entity like Lost that has slowly built its

5   identity and recognition over decades, maintaining its reputation with the public

6   requires enormous efforts and resources.  Once harmed, they are difficult to rebuild

7   and regain traction in business.  Lost is a smaller enterprise compared to that of Lady

8   Gaga and her brand.  The difference in power dynamics in the public presence

9   between the parties here is tremendous, circumstances as such often place the smaller

10  enterprise in a disadvantageous position in their claims against the other party with

11  overpowering resources and access to public platforms.  Given the strong public

12  policy for protecting trademark rights, the public will benefit from the positive

13  outcome of this action as this will promote and encourage others in similar

14  circumstances to seek justice to protect their rights.

15              **4.     No Bond Should be Required.**

16  Under Fed. R. Civ. P. 65(c), a preliminary injunction must be accompanied by

17  a bond "in such a sum as the court deems proper, for the payment of such costs and

18  damages as may be incurred or suffered by any party who is found to have been

19  wrongfully enjoined or restrained."  But Rule 65(c) "invests the district court with

20  discretion as to the amount of security required, if any."  *Tari Labs, LLC v. Lightning*

21  *Labs, Inc.*, 2023 WL 2480739, at *12 (quoting *Johnson v. Couturier*, 572 F.3d 1067,

22  1086 (9th Cir. 2009)); *see Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)

23  (The Court "may dispense with the filing of a bond when it concludes there is no

24  realistic likelihood of harm to the defendant from enjoining [its] conduct.").  Here,

25  the Court should not require a bond where the evidence of infringement is strong, a

26  preliminary injunction is solidly in the public interest and will not cause any legally

27  cognizable harm to Lady Gaga but will help prevent further irreparable harm to Lost.

28

23

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

3430.067

1    **V.    CONCLUSION**

2        For the foregoing reasons, Lost respectfully asks this Court to grant its Motion

3    for a Preliminary Injunction, without a security bond.

4

5    Dated: May 8, 2025                                BREMER WHYTE BROWN & O'MEARA
                                                       LLP
6

7                                                      By: _____

8                                                          Keith G. Bremer
                                                           Benjamin Price
9                                                          Olivia Zorayan
                                                           Attorneys for Plaintiff
10                                                         LOST INTERNATIONAL, LLC, a
                                                           California limited liability company
11   Dated:  May 8, 2025                               KNOBBE, MARTENS, OLSON & BEAR,
                                                       LLP
12

13

14                                                     By:  /s/ Steven J. Nataupsky
                                                       _____
15                                                         Steven J. Nataupsky
                                                           Attorney for Plaintiff
16                                                         LOST INTERNATIONAL, LLC, a
                                                           California limited liability company

17

18

19

20

21

22

23

24

25

26

27

28

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

3430.067

24

1

## CERTIFICATE OF COMPLIANCE

2          The undersigned, counsel of record Plaintiff Lost International, LLC, certifies

3   that this brief contains 6,999 words, which complies with the word limit of L.R. 11-

4   6.1.

5   Dated: May 8, 2025

6                                            BREMER WHYTE BROWN & O'MEARA
                                             LLP
7

8                                            By: _____

9                                               Keith G. Bremer
                                                Benjamin Price
10                                              Olivia Zorayan
                                                Attorneys for Plaintiff
11                                              LOST INTERNATIONAL, LLC, a
                                                California limited liability company
12  Dated:  May 8, 2025                      KNOBBE, MARTENS, OLSON & BEAR,
                                             LLP
13

14                                           By: ___/s/ Steven J. Nataupsky_____

15                                              Steven J. Nataupsky
                                                Attorney for Plaintiff
16                                              LOST INTERNATIONAL, LLC, a
                                                California limited liability company
17

18

19

20

21

22

23

24

25

26

27

28

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

3430.067

25

# EXHIBIT "A"

# EXHIBIT "A"

Generated on: This page was generated by TSDR on 2025-03-19 01:09:50 EDT

Mark: MAYHEM

# MAYHEM

| | | | |
|---|---|---|---|
| US Serial Number: | 86520340 | Application Filing Date: | Jan. 30, 2015 |
| US Registration Number: | 4790623 | Registration Date: | Aug. 11, 2015 |
| Filed as TEAS Plus: | Yes | Currently TEAS Plus: | Yes |
| Register: | Principal | | |
| Mark Type: | Trademark | | |

TM5 Common Status Descriptor:

LIVE/REGISTRATION/Issued and Active

The trademark application has been registered with the Office.

Status: The registration has been renewed.

Status Date: Nov. 24, 2024

**Publication Date:** May 26, 2015

## Mark Information

Mark Literal Elements: MAYHEM

Standard Character Claim: Yes. The mark consists of standard characters without claim to any particular font style, size, or color.

Mark Drawing Type: 4 - STANDARD CHARACTER MARK

## Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

For: Beanies; Caps; Jackets; Pants; Sandals; Shorts; T-shirts; Tank tops

| | | | |
|---|---|---|---|
| International Class(es): | 025 - Primary Class | U.S Class(es): | 022, 039 |
| Class Status: | ACTIVE | | |
| First Use: | Sep. 15, 1988 | Use in Commerce: | Jan. 15, 1992 |

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| Filed Use: | Yes | Currently Use: | Yes |
| Filed ITU: | No | Currently ITU: | No |
| Filed 44D: | No | Currently 44D: | No |
| Filed 44E: | No | Currently 44E: | No |
| Filed 66A: | No | Currently 66A: | No |
| Filed No Basis: | No | Currently No Basis: | No |

## Current Owner(s) Information

Owner Name: Lost International, LLC

**Owner Address:** 170 Technology Drive
Irvine, CALIFORNIA UNITED STATES 92618

**Legal Entity Type:** LIMITED LIABILITY COMPANY

**State or Country Where Organized:** CALIFORNIA

# Attorney/Correspondence Information

### Attorney of Record

**Attorney Name:** Bryan Friedman

**Attorney Primary Email Address:** ip@fsglawyers.com

**Attorney Email Authorized:** Yes

### Correspondent

**Correspondent Name/Address:** Bryan Friedman
FSG Lawyers PC
19800 MACARTHUR BLVD., STE. 975
Irvine, CALIFORNIA United States 92612

**Phone:** 9492651100

**Fax:** 9492651199

**Correspondent e-mail:** ip@fsglawyers.com smurray@fsglawyers.com

**Correspondent e-mail Authorized:** Yes

### Domestic Representative - Not Found

# Prosecution History

| Date | Description | Proceeding Number |
|------|-------------|-------------------|
| Nov. 24, 2024 | NOTICE OF ACCEPTANCE OF SEC. 8 & 9 - E-MAILED | |
| Nov. 24, 2024 | REGISTERED AND RENEWED (FIRST RENEWAL - 10 YRS) | |
| Nov. 24, 2024 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | |
| Nov. 24, 2024 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | |
| Aug. 23, 2024 | TEAS SECTION 8 & 9 RECEIVED | |
| Aug. 11, 2024 | COURTESY REMINDER - SEC. 8 (10-YR)/SEC. 9 E-MAILED | |
| May 16, 2023 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| May 16, 2023 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED | |
| May 16, 2023 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED | |
| Nov. 06, 2021 | NOTICE OF ACCEPTANCE OF SEC. 8 & 15 - E-MAILED | |
| Nov. 06, 2021 | REGISTERED - SEC. 8 (6-YR) ACCEPTED & SEC. 15 ACK. | |
| Nov. 06, 2021 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | |
| Aug. 03, 2021 | TEAS SECTION 8 & 15 RECEIVED | |
| Aug. 11, 2020 | COURTESY REMINDER - SEC. 8 (6-YR) E-MAILED | |
| Dec. 05, 2018 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED | |
| Dec. 05, 2018 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED | |
| Aug. 11, 2015 | REGISTERED-PRINCIPAL REGISTER | |
| May 26, 2015 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED | |
| May 26, 2015 | PUBLISHED FOR OPPOSITION | |
| May 06, 2015 | NOTIFICATION OF NOTICE OF PUBLICATION E-MAILED | |
| Apr. 21, 2015 | LAW OFFICE PUBLICATION REVIEW COMPLETED | |
| Apr. 21, 2015 | ASSIGNED TO LIE | |
| Mar. 30, 2015 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Mar. 30, 2015 | ASSIGNED TO EXAMINER | |
| Feb. 10, 2015 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED | |
| Feb. 03, 2015 | NEW APPLICATION ENTERED | |

# TM Staff and Location Information

### TM Staff Information - None

### File Location

**Current Location:** PUBLICATION AND ISSUE SECTION

**Date in Location:** Nov. 24, 2024



# MAYHEM

Reg. No. 4,790,623

Registered Aug. 11, 2015

Int. Cl.: 25

TRADEMARK

PRINCIPAL REGISTER

LOST INTERNATIONAL, LLC (CALIFORNIA LIMITED LIABILITY COMPANY)
170 TECHNOLOGY DRIVE
IRVINE, CA 92618

FOR: BEANIES; CAPS; JACKETS; PANTS; SANDALS; SHORTS; T-SHIRTS; TANK TOPS, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 9-15-1988; IN COMMERCE 1-15-1992.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 86-520,340, FILED 1-30-2015.

DOMINIC J. FERRAIUOLO, EXAMINING ATTORNEY



Director of the United States
Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  *See* 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  *See* 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  *See* 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at**  http://www.uspto.gov.

Page: 2 / RN # 4,790,623

**PROOF OF SERVICE**

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 20320 S.W. Birch Street, Second Floor, Newport Beach, California 92660. My business e-mail address is sgomez@bremerwhyte.com.

On May 8, 2025, I served the within document(s) described as:

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

on the interested parties in this action as stated on the attached mailing list.

[X]  (BY ELECTRONIC SERVICE) Complying with Code of Civil Procedure § 1010, I caused such document(s) to be Electronically Filed and Served through the CM/ECF for the above-entitled case. Upon completion of transmission of said document(s), a filing receipt is issued to the filing party acknowledging receipt, filing and service by CM/ECF's system. A copy of the CM/ECF filing receipt page will be maintained with the original document(s) in our office.

I certify that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 8, 2025, at Newport Beach, California.

I declare under penalty of perjury that the foregoing is true and correct.

Sandra Gomez
(Type or print name)                    (Signature)

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

1

3430.067  4923-3188-3570.1

**Lost International, LLC vs. Stefani Joanne Angelina Germanotta**

**Case No. 8:25-CV-00592-FMO-KES**

**BWB&O CLIENT:**    **Lost International, LLC**
**BWB&O FILE NO.:**    **3430.067**

**SERVICE LIST**

| | |
|---|---|
| Howard S. Hogan, Esq.<br>Orin Snyder, Esq.<br>GIBSON DUNN<br>1700 m Street N.W.<br>Washington, DC 20036-5404<br><br>Tel: (202) 887-3640<br>Fax: (202) 530-9550<br>Email:HHogan@gibsondunn.com<br>       OSnyder@gibsondunn.com<br><br>Attorney for Defendant, *STEFANI JOANNE ANGELINA GERMANOTTA aka LADY GAGA* | |

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

2

3430.067  4923-3188-3570.1