BREMER WHYTE BROWN & O'MEARA LLP
Keith G. Bremer, State Bar No. 155920
kbremer@bremerwhyte.com
Benjamin Price, State Bar No. 267400
bprice@bremerwhyte.com
Olivia Zorayan, State Bar No. 352064
ozorayan@bremerwhyte.com
20320 S.W. Birch Street
Second Floor
Newport Beach, California 92660
Telephone:  (949) 221-1000
Facsimile:   (949) 221-1001

KNOBBE, MARTENS, OLSON & BEAR, LLP
Steven J. Nataupsky, State Bar No. 155913
steven.nataupsky@knobbe.com
2040 Main Street
14th Floor
Irvine, CA 92614
Telephone: 949-760-0404

Attorneys for Plaintiff,
LOST INTERNATIONAL, LLC, a California limited liability company

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOST INTERNATIONAL, LLC, a California limited liability company, | Case No.: 8:25-cv-00592 FMO (KESx) |
| Plaintiff, | **LOST'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| STEFANI JOANNE ANGELINA GERMANOTTA aka LADY GAGA, an individual; and DOES 1 through 100, inclusive, | Complaint Filed:  March 25, 2025 |
| Defendant. | |

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

3430.067

# **TABLE OF CONTENTS**

| | Page |
|---|---|
| I. INTRODUCTION | 1 |
| II. LOST'S REGISTERED AND COMMON LAW TRADEMARK RIGHTS | 3 |
| III. LOST IS LIKELY TO SUCCEED ON ITS TRADEMARK INFRINGEMENT CLAIMS AGAINST LADY GAGA | 5 |
|    A. Lady Gaga's Use of Lost's Mark is Not Protected by the First Amendment | 5 |
|    B. Lady Gaga's Use of the Mark is Not Protected Fair Use | 8 |
|    C. Aesthetic Functionality | 9 |
|    D. Likelihood of Reverse Confusion | 11 |
| IV. LOST HAS ALREADY SUFFERED AND WILL CONTINUE TO SUFFER IRREPARABLE HARM AS A RESULT OF LADY GAGA'S USE OF LOST'S MARK | 13 |
| V. BALANCE OF EQUITIES AND PUBLIC INTEREST TIPS SHARPLY IN LOST'S FAVOR | 14 |
| VI. LOST'S REQUESTED INJUNCTION IS NOT OVERBROAD OR VAGUE | 15 |
| VII. CONCLUSION | 15 |

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

i

3430.067

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMF, Inc. v. Sleekcraft Boats*, 174 F.3d at 1052 n.15 (9th Cir. 1979) ..................... 11

*Au-Tomotive Gold, Inc. v. Volkswagen of Am.*, Inc., 457 F.3d 1062, 1064 (9th Cir. 2006) ........................................................................................... 9

*Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1245 (9th Cir. 2013) ................................ 6

*Dreamwerks Prod. Grp. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir. 1998) ........................................................................................................... 11

*Films of Distinction v. Allegro Film Prods.*, 12 F. Supp. 2d 1068, 1072 (C.D. Cal. 1998) ..................................................................................... 8

*Hoffman v. Capital Cities/ABC, Inc.* 255 F.3d 1180, 1185-86 (9th Cir. 2001) ................................................................................................................. 8

*LTTB Ltd. Liab. Co. v. Redbubble, Inc.*, 840 F. App'x 148 (9th Cir. 2021) ........................................................................................................... 9

*Mattel*, 296 F.3d at 900, 902 ..................................................................................... 5

*Mattel*, 296 F.3d at 906 ............................................................................................. 8

*Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002) ..................... 5

*Packman v. Chicago Tribune Co.* 267 F.3d 628 (7th Cir. 2001) .............................. 8

*Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989) ............................................. 5

*Rogers*, 875 F.2d at 1001 .......................................................................................... 6

*Rogers*, 875 F.2d at 997–1000 .................................................................................. 5

*Twentieth Century Fox TV v. Empire Distrib., Inc.*, 875 F.3d 1192 (9th Cir. 2017) ................................................................................................. 6

*Twentieth*, 875 F.3d 1192 ......................................................................................... 7

*Twentieth*, 875 F.3d 1192 at 119 ............................................................................... 6

**Statutes**

15 U.S.C.S. § 1115(a)(4) ........................................................................................... 8

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

ii

3430.067

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff LOST INTERNATIONAL, LLC's ("Lost") Motion for Preliminary Injunction ("Lost's Motion") asks this Court to grant a preliminary injunction prohibiting Defendant STEFANI JOANNE ANGELINA GERMANOTTA ("Lady Gaga") from using Lost's registered trademark, "MAYHEM®" registration number 4,790,623 (the "Mark"), to market and sell clothing and headwear in International Class 25 bearing the Mark. Lady Gaga's unauthorized use of the "MAYHEM" Mark is likely to cause consumer confusion and irreparably harm Lost's brand.

Lady Gaga is currently selling clothing and headwear bearing the "MAYHEM" Mark, and to make matters worse, it is with a confusingly similar stylization, all without Lost's permission. For the reasons discussed in Lost's Motion, Lady Gaga's highly publicized use of the Mark is likely to cause and has already caused significant confusion among Lost's customers which will destroy Lost's brand identity and reputation in its target core surf community that is grounded in standing apart from the mainstream, in direct contradiction to Lady Gaga's image. Lady Gaga's arguments against an injunction made throughout her Opposition are unfounded and do not alter the legal and factual basis supporting the injunction, as detailed in Lost's Motion and Reply below. Therefore, the Court should grant the injunction to protect Lost's trademark rights and prevent further permanent harm to Lost for the following reasons: (1) Lost has valid and protectable rights in the Mark; (2) Lost is likely to succeed on the merits of its trademark infringement claims; (3) Lost has already suffered and will continue to suffer irreparable harm as a result of Lady Gaga's use of Lost's Mark; and (4) the balance of equities and public interest tip sharply in Lost's favor.

First, Lost has valid and protectable rights in the "MAYHEM" Mark, which is registered in International Class 25 for clothing and headwear. Lost has used the mark in commerce for over three decades, establishing strong brand recognition and

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

1

3430.067

goodwill within the surf community. Contrary to Lady Gaga's arguments, Lost is the *only* owner of the registered trademark in Class 25 for the word "MAYHEM" alone, and Lady Gaga's use of the Mark is nearly identical to Lost's, increasing the likelihood of consumer confusion. This confusion is exacerbated by the similarity in the stylization of the marks and the overlapping marketing channels.

     Second, Lost is likely to succeed on the merits of its trademark infringement claims and Lady Gaga's use of "MAYHEM" is not protected by the First Amendment and fair use doctrines. These defenses in Lady Gaga's Opposition are inapplicable because Lady Gaga's use of the Mark is not merely expressive but serves as a commercial source identifier, intentionally misleading consumers into associating Lost's brand with Lady Gaga's.

     Third, Lady Gaga's widespread unauthorized use of Lost's Mark poses a significant threat to Lost's brand reputation and market position. The potential for consumer confusion and the destruction of Lost's reputation and brand identity constitutes irreparable harm that justifies the issuance of a preliminary injunction.

     Lastly, the balance of hardships sharply tips in Lost's favor because for Lady Gaga, her "Mayhem" album is merely a moment in time, and she will undoubtedly move onto her next successful album or movie after her tour, while Lost's reputation will be destroyed because its entire MAYHEM® brand and identity will have been consumed by Lady Gaga's fame and dominant influence. Thus, the protection of trademark rights and the prevention of consumer confusion are paramount and the public interest is served by upholding trademark laws and ensuring that consumers are not misled by similar marks in the marketplace.

     As detailed in Lost's Motion and below, the requested injunction does not and would not preclude *all* use of "MAYHEM," but rather it would specifically prohibit Lady Gaga from using Lost's MAYHEM® Mark on items covered in its registered Class 25, including without limitation, beanies, caps, jackets, pants, sandals, shorts, t-shirts, and tank tops bearing the Mark. Lady Gaga's Opposition to Lost's Motion

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

2

3430.067

presents a series of disparate arguments, yet none of these alter the underlying facts and law that support the issuance of the injunction.

## II. LOST'S REGISTERED AND COMMON LAW TRADEMARK RIGHTS

Lady Gaga argues that Lost owns only one of 200 registered marks that contain the word "mayhem." Dkt. 19 at 4, 14. However, as Lady Gaga points out, only 34 of those marks are registered in Class 25 and **none** of those 34 marks, aside from Lost's, are registered for the word "Mayhem" alone. Dkt. 19-1 ¶ 7, Ex. 4. All of the marks cited by Lady Gaga and referenced in her supporting Declarations and exhibits contain phrases that include the word "mayhem" such as "Miami Mayhem," "Mayhem Motors," and "Florida Mayhem." *Id*. Thus, Lost is the *only* owner of the registered trademark in Class 25 for solely the word, "Mayhem." Neither Lost's registration nor Lady Gaga's use adds words to the Mark, and Lady Gaga fails to show how any of these other registrations are relevant or negate Lost's rights to MAYHEM®.

Lady Gaga also makes an attempt to discredit Lost's Mark because "mayhem" appears on a number of other shirts that belong to brands Lady Gaga claims are, "much more prominent that Lost's." Dkt. 19 at 5. Lady Gaga offers *no evidence* to support her claim that the other brands are more widespread than Lost or that those third-party uses were no more than a limited promotion, if they are even currently on the market. In fact, many of these brands are one-offs that Lost has never seen on the market and only use the word "mayhem" as part of a phrase and greater intricate design that bears little to no resemblance to Lost's Mark. See Dkt. 19 at 4-6. These items cited in Lady Gaga's supporting Declaration of Kathryn Cox are mainly listed for sale on websites such as Etsy, Zazzle, and Redbubble who host independent third-party sellers that specialize in making custom one-off products. Dkt. 19-12 ¶ 3. "Mayhem" is nearly unnoticeable on almost all of these examples cited by Lady Gaga, whereas on Lady Gaga's items, "MAYHEM" appears prominently as the main and only focus of the design, using an almost identical design to Lost's.

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

3

3430.067

The *Norwegian* heavy metal rock band called "Mayhem" may have toured in the U.S. but certainly has a more prominent influence outside the United States where it originated and its mark is arguably unreadable. See Dkt. 19 at 5. In any event, none of these examples cited by Lady Gaga are remotely near the influence and reach that Lady Gaga has, per her own contention that she is one of the world's bestselling artists whose tour will certainly be much more widespread than these unrecognizable brands. Dkt. 19 at 7.

Additionally, Lady Gaga argues that Lost's registration is to "the word mark only, without claim to 'any particular style, size, color,'" which indeed *supports* Lost's position. This is because regardless of whether Lost's Mark and Lady Gaga's use have similar stylizations, Lady Gaga is infringing Lost's Mark by selling clothing bearing the word "MAYHEM" because Lost owns the word mark, regardless of the stylized form. Dkt. 19 at 4. Lost's Motion includes images of Lost's Mark and Lady Gaga's shirts bearing the similar mark to highlight the stylistic similarity that elevates the risk of consumer confusion. Dkt. 17 at 12-13. However, Lost's Mark is a word mark and no matter how Lady Gaga styles it, her use of the word "Mayhem" on clothing items within Class 25 violates well-established trademark laws and infringes Lost's right to the Mark. Additionally, Lady Gaga fails to oppose Lost's common law rights in its stylized form derived through its use in commerce for decades, which is discussed in depth in Lost's Motion and Complaint. Dkt. 17 at 3-4. Notably, Lady Gaga's Opposition also neglected to provide any explanation of how she came up with the stylization that is strikingly similar to Lost's, which is a glaring omission.

Lady Gaga fails to provide any reason why Lost does not rightfully own the MAYHEM® Mark for use within its registered class.

/ / /

/ / /

/ / /

## III. LOST IS LIKELY TO SUCCEED ON ITS TRADEMARK INFRINGEMENT CLAIMS AGAINST LADY GAGA.

### A. Lady Gaga's Use of Lost's Mark is Not Protected by the First Amendment.

Lady Gaga argues that her use of "MAYHEM" is protected by the First Amendment under the *Rogers* test, claiming it is part of an expressive work. Dkt. 19 at 9. However, Lady Gaga's use of "MAYHEM" on the Class 25 goods is not merely expressive but serves as a source identifier, misleading consumers into associating Lost's brand with Lady Gaga's due to her use of the strikingly similar stylized mark. The artistic relevance claimed by Lady Gaga does not negate the likelihood of consumer confusion, especially given the prominence of the "Mayhem" mark on both parties' merchandise.

Under the *Rogers* test, the title of an expressive work does not violate the Lanham Act "unless the title has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the title explicitly misleads as to the source or the content of the work." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002) (internal quotation marks omitted) (quoting *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989)). There are two rationales for treating expressive works differently from other covered works: because (1) they implicate the First Amendment right of free speech, which must be balanced against the public interest in avoiding consumer confusion; and (2) consumers are less likely to mistake the use of someone else's mark in an expressive work for a sign of association, authorship, or endorsement. See *Rogers*, 875 F.2d at 997–1000; *Mattel*, 296 F.3d at 900, 902.

Lost does not challenge that Lady Gaga's music album is an expressive work nor does it request the Court to enjoin Lady Gaga from naming her album, "MAYHEM." Rather, Lost contends that the *Rogers* test does not apply to Lady Gaga's use of "MAYHEM" on Class 25 uses like <u>clothing and headwear</u> because

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

5

3430.067

1 those items are *not* expressive works of art on their own, failing the first prong of the
2 test. If the album is removed from consideration, the clothing bears no artistic
3 expression standing alone. The *Rogers* test is not a get out of jail free card to
4 infringe a trademark on all goods and services which are commercial in nature.
5 Under the second rationale for treating expressive works differently, consumers are
6 *not* less likely to mistake Lady Gaga's mark on clothing for Lost's. Lost has
7 provided ample evidence in its Motion that confusion between the two marks are not
8 only likely but has already begun, before Lady Gaga's tour has even commenced in
9 the United States. Dkt. 17 at 15-16.
10       Lady Gaga fails the second prong of the *Rogers* test as well. To fail the
11 second prong of the *Rogers* test, it is key . . . that the creator must explicitly mislead
12 consumers. *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1245 (9th Cir. 2013). We must
13 ask not only about the likelihood of consumer confusion but also "whether there was
14 an 'explicit indication,' 'overt claim,' or 'explicit misstatement' that caused such
15 consumer confusion." *Id*., quoting *Rogers*, 875 F.2d at 1001. Lady Gaga's use of
16 "MAYHEM" on a commercial item, namely clothing, explicitly misleads consumers
17 as to the source or the content of the mark and specifically, her nationwide concert
18 will cause the consuming public to see Lost's Mark and associate it with Lady Gaga.
19 Accordingly, Lady Gaga's intentional infringement explicitly misleads consumers
20 and is causing significant consumer confusion as to the source of Lost's products and
21 thus, the second *Rogers* prong is not satisfied.
22       Lady Gaga cites the distinguishable case, *Twentieth Century Fox TV v. Empire*
23 *Distrib., Inc.,* 875 F.3d 1192 (9th Cir. 2017) (the "*Empire* case"), and claims that her
24 use of "MAYHEM" on clothing and headwear is promotional and thus the *Rogers*
25 test extends to those products. Dkt. 19 at 11. In the *Empire* case, the Court reasoned
26 that the balance of First Amendment interests struck in *Rogers* and *Mattel* could be
27 destabilized if the titles of expressive works were protected but could not be used to
28 promote those works. *Twentieth,* 875 F.3d 1192 at 119. The main issue in the

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

3430.067

6

*Empire* case was whether Twentieth Century Fox Television's use of the name "Empire" for its television show and associated music releases infringes on the trademark rights of Empire Distribution, Inc., under the Lanham Act, with the court ultimately affirming that Fox's use was protected by the First Amendment and did not violate the Lanham Act. *Twentieth*, 875 F.3d 1192. The promotional use of the "Empire" title on advertisements and marketing goods such as shirts was an ancillary matter in the *Empire* case, whereas Lost is *only* seeking to enjoin Lady Gaga from using the Mark on clothing and is <u>not</u> seeking to enjoin Lady Gaga from naming her album or music, "MAYHEM." *Id.* The *Empire* case is also distinguishable because Empire did not argue that it owned the trademark for clothing items specifically, rather it can be inferred that its trademark generally covered music production and distribution services. Here, Lost owns the trademark specifically for clothing and headwear items and the primary focus of its Motion is to protect that right against Lady Gaga's infringement on clothing items bearing the "MAYHEM" mark, not the title of her album and tour.

Lost further contends that Lady Gaga's dominant purpose of printing the "MAYHEM" mark on clothing and selling them at her concerts and on her website is *not* to advertise her album, rather it is a source of income for Lady Gaga and part of the overall customer experience of attending a concert. Lady Gaga does not sell clothing at concerts to sell more albums, as attendees who buy Lady Gaga's branded clothing at her concert are presumably already consumers of her music and buy the clothing either as a souvenir, memento, or because of its aesthetic appeal, per her own contentions. See Dkt. 19 at 13. Also as discussed in Lost's Motion, Lady Gaga has several versions of her merchandise related to the concert that do not infringe Lost's Mark, which she may continue to sell online and at her concerts once the U.S. tour commences.

Lastly, in *Mattel, Inc. v. MCA Record*, the Court held that the song which parodied the plaintiff's Barbie doll was not purely commercial speech and was fully

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

7

3430.067

1  protected by the First Amendment.  *Mattel*, 296 F.3d at 906.  If speech is not "purely
2  commercial" – that is, if it does more than propose a commercial transaction – then it
3  is entitled to full First Amendment protection.  *Hoffman v. Capital Cities/ABC, Inc.*
4  255 F.3d 1180, 1185-86 (9th Cir. 2001).  Lady Gaga's clothing bearing the infringing
5  mark is purely commercial speech and thus not protected because its sole purpose is
6  to propose a commercial transaction to sell clothing, and because the clothing is not
7  the expression, the music is.

8      Therefore, Lady Gaga's use of "MAYHEM" on clothing fails the *Rogers* test
9  and thus, the Lanham Act applies.

### B. Lady Gaga's Use of the Mark is Not Protected Fair Use

11     Lady Gaga's Opposition argues that her use of "MAYHEM" is protected
12 under the fair use doctrine, arguing it is used descriptively and not as a trademark.
13 Dkt. 19 at 11.  The fair use defense is inapplicable when the use of a mark causes
14 consumer confusion, as is the case here.  *Films of Distinction v. Allegro Film Prods.*,
15 12 F. Supp. 2d 1068, 1072 (C.D. Cal. 1998).  The elements of descriptive fair use:
16 (1) its "use of the term is not as a trademark or service mark"; (2) it "uses the term
17 'only to describe its goods or services'"; and (3) it "uses the term 'fairly and in good
18 faith.'"  15 *U.S.C.S.* § 1115(a)(4).

19     Lady Gaga claims she is not using "MAYHEM" as a mark and that Lost does
20 not contend otherwise.  Dkt. 19 at 11.  First, Lost certainly contends that Lady Gaga
21 is using "MAYHEM" as a mark throughout its entire motion, given her strikingly
22 similar mark is prominently displayed on the infringing clothing items.  Second,
23 Lady Gaga may argue that "MAYHMEM" is descriptive of her album, but the
24 dictionary word, "MAYHEM" is never used to describe clothing items and
25 "MAYHEM" is completely arbitrary when used in relation to clothing and headwear.

26     Lady Gaga cites *Packman v. Chicago Tribune Co.* where "the defendants used
27 '[t]he joy of six' as a headline to describe a newsworthy event and the happiness
28 associated with the Bulls' sixth NBA championship.  *Packman v. Chicago Tribune*

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

3430.067

8

*Co*. 267 F.3d 628 (7th Cir. 2001). This use did not change with the reproduction of the Tribune's front page onto championship memorabilia." *Id.* at 641. The stylization of the marks in the *Packman* case were more distinctive, which weighs against a finding of likelihood of confusion. Id at 645. However, as discussed in Lost's Motion and above, its Mark and Lady Gaga's styled version are strikingly similar and the word mark itself is identical. Further, Lady Gaga does not use the term "MAYHEM" fairly and in good faith on clothing because her use clearly infringes on Lost's Mark, given she has known of Lost's trademark rights at least as early as the date of Lost's cease and desist letter. Dkt. 17 at 7.

### C. Aesthetic Functionality

Lady Gaga's Opposition claims that Lost's Mark is aesthetically functional and thus not protectable. Lost argues that its trademark serves a brand-identifying function, distinguishing its products in the marketplace, as Lost's co-owner, Matt Biolos, is MAYHEM® and the Mark identifies him and his brand directly. Dkt. 17 at 2. The aesthetic appeal of the Mark does not diminish its role as a source identifier for Lost's merchandise.

The long-standing test for functionality in the Ninth Circuit asks: (1) whether the feature delivers any utilitarian advantage, (2) whether alternative designs are possible, (3) whether advertising touts utilitarian benefits of the feature, and (4) whether the feature results in economies in manufacture or use. *Au-Tomotive Gold, Inc. v. Volkswagen of Am.*, Inc., 457 F.3d 1062, 1064 (9th Cir. 2006). Protection of Lost's Mark is not barred by the doctrine of aesthetic functionality and Lady Gaga fails to even address this test in her Opposition.

Lady Gaga only cites a distinguishable case where the plaintiff presented no evidence to avoid the conclusion that the subject marks served an aesthetic purpose wholly independent of any source-identifying function and thus were aesthetically functional. *LTTB Ltd. Liab. Co. v. Redbubble, Inc.*, 840 F. App'x 148 (9th Cir. 2021). However, Lost does in fact provide evidence that Lady Gaga's use of "MAYHEM"

on clothing is a source-identifying function and their sole purpose is *not* aesthetics. As depicted in the photos produced in the exhibits to the Declaration of Benjamin Price, Lady Gaga uses the mark and similar stylization on her album cover, streaming platforms, website, tour advertisements and is displayed across her social platforms. Dkt. 15-4. There is no argument that the infringing items identify her album, tour and Lady Gaga herself as their sources. Lady Gaga's "MAYHEM" clothing is not independent of source identification and would not even exist without her album and tour.

      Lady Gaga's argument that she is not using "MAYHEM" as a source-identifier is a blatant mischaracterization. Lady Gaga's brand is her music and the art that she makes, so anything she publishes and promotes, especially on the scale she is promoting "MAYHEM," identifies her as the source. Further, Lady Gaga did not release the infringing clothes for style or aesthetic purposes as her clothing is a source of additional income related to her album and created to compliment her album, enhance fan experience and allow her listeners to purchase memorabilia and souvenirs commemorating their fandom for Lady Gaga.

      Lady Gaga also argues that she uses the mark as "merely a decorative feature that commemorates" the album and tour but also previously argues it is descriptive use. Dkt. 19 at 2, 10, 13. Lady Gaga argues that her version of "MAYHEM" as used on clothing is *not* source identifying because she identifies herself as the source, rather than the album, and because many of the shirt designs include her name. Conversely, Lady Gaga also argues that the consumers buy her goods because they find her mark aesthetically pleasing, not because the mark identifies Lady Gaga. Dkt. 19 at 13. Lady Gaga's arguments are conflicting, unclear and logically inconsistent as she takes opposite positions to sway authority in her favor. If Lady Gaga's use of "MAYHEM" on clothing is merely decorative, then she can remove the infringing Mark from her clothing and replace with non-infringing "decorative" features included on many of her other products that do not bear "MAYHEM."

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

10

3430.067

### D. Likelihood of Reverse Confusion

Lady Gaga's Opposition incorrectly dismisses Lost's likelihood of reverse confusion argument, citing alleged distinctiveness of the parties' uses of "MAYHEM." The similarity in stylization and the overlapping consumer base *increase* the risk of reverse confusion, where consumers will mistakenly believe that Lost's products are affiliated with Lady Gaga.

As discussed in depth in Lost's Motion, all eight *Sleekcraft* factors, especially the strength and arbitrariness of the mark, similarity of the marks and relatedness of the goods, point to a strong likelihood of confusion and illustrate that customers will see Lost's Mark and mistakenly believe it belongs to or is associated with Lady Gaga. *AMF, Inc. v. Sleekcraft Boats*, 174 F.3d at1052 n.15 (9th Cir. 1979); *Dreamwerks Prod. Grp. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir. 1998). Dkt 17 at 11-12.

Lady Gaga argues that the alleged third-party use of the mark renders it weak. Dkt. 19 at 14-15. However, for the reasons discussed above and in Lost's Motion, the alleged third-party uses do not affect the strength of Lost's Mark, as none of them display the Mark as prominently on its clothing as Lost and Lady Gaga. Dkt 17 at 12-13. Lost's Mark is commercially and conceptually strong. Lost has been using the Mark for over three decades and the Mark is arbitrary when used on clothing.

Lady Gaga also attempts to discredit the clear similarity of Lost's Mark and Lady Gaga's use on infringing clothing and headwear because they are "visually distinct" claiming the marks are usually accompanied by "… Lost Surfboards" and "Lady Gaga." Dt. 19 at 15-16. Even if "Lady Gaga" appears prominently next to "MAYHEM," there would certainly still be reverse confusion as it reinforces the message that Lady Gaga, and not Lost, owns the MAYHEM mark.

Additionally, this does not negate the fact that Lady Gaga's use of "MAYHEM" is identical given the word mark alone and the shockingly similar stylization. Further, several of the items sold by Lost and by Lady Gaga bear the

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

11

3430.067

Mark alone, without identification of its source, and the Mark is prominently displayed on most of the items at issue, which certainly leaves doubt as to the source of the goods to the general public who will no doubt be exposed to Lady Gaga's "MAYHEM" marketing more than Lost's.

Lady Gaga argues there is no actual confusion because Lost's core surf community would never confuse Lost with Lady Gaga. However, the test is not whether Lost's own niche community would confuse the brands, but whether the general public as a whole would. The general consuming public is mainly unfamiliar with Lost and would certainly recognize the widely publicized Lady Gaga version more easily than Lost's Mark. The Marks bear the identical word and confusingly similar style which will cause members of the consuming public to see Lost's MAYHEM® clothing and think it is Lady Gaga's tour merchandise which would destroy Lost's brand. Dkt 17 at 16.

Lady Gaga argues that comments on articles produced by Lost indicate that there are some consumers who are not confused. Dkt. 19 at 7, 17. However, the likelihood of confusion factor does not require that *all people* be confused, but evaluates whether confusion among consumers is likely, which Lost has certainly demonstrated throughout its Motion. The likelihood of confusion is not negated by the handful of people who will not be confused, especially the ones commenting on a post after reading the article about the dispute.

Lady Gaga also argues that Lost cites comments in articles but not spontaneous examples of people making incorrect purchasing decisions, which is not true as Lost provides one of many declarations and comments where a customer mistook a Lost item for Lady Gaga's. Dkt. 19 at 17; Dkt. 17 at 16. Also, the confusion is not only evidenced by mistaken purchases. The harmful effect of confusion that Lost complains of throughout its Motion is mainly misrecognition of Lost's Mark and associating it with Lady Gaga, which will cause harm to Lost's *reputation* and brand.

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

12

3430.067

As discussed above, Lost contends that Lady Gaga had full knowledge of Lost's ownership of the Mark because Lost provided her notice in its cease and desist letter, and thus by overlooking Lost's public registration, Lady Gaga either willfully or recklessly intended to use Lost's Mark. Dkt. 17 at 7. Lady Gaga also tries to distinguish the marketing channels and relatedness of goods but fails because it is clear that the channels, including the internet, and the goods, including clothing and headwear, are identical and that these factors weigh in Lost's favor.

For these reasons, all the factors weigh in favor of establishing a likelihood of reverse confusion.

## IV. LOST HAS ALREADY SUFFERED AND WILL CONTINUE TO SUFFER IRREPARABLE HARM AS A RESULT OF LADY GAGA'S USE OF LOST'S MARK.

Lady Gaga's Opposition argues that Lost has not demonstrated irreparable harm, claiming that any harm is speculative. Lost counters that the unauthorized use of its trademark by a high-profile artist like Lady Gaga poses a significant threat to its brand reputation and market position. The potential for consumer confusion and the dilution of Lost's brand identity constitute irreparable harm that justifies the issuance of a preliminary injunction, as evidenced by the comments and declarations supporting ample confusion before Lady Gaga's U.S. tour has even begun. Naturally, this confusion will grow exponentially once the U.S. leg of Lady Gaga's tour commences in July 2025, overwhelming the goodwill Lost has carefully cultivated in the MAYHEM® brand for over three decades. Because of this impending tour, time is of the essence in mitigating the undeniable damage to Lost that will ensue after Lady Gaga's tour begins.

Lady Gaga also claims that the items being sold on Walmart.com that bear her name, tour and album title, which are identical to the ones on her website and marketing efforts, are *not* approved by Lady Gaga. Dkt. 19 at 8. However, it is only because Lady Gaga used Lost's Mark first that third parties are now making

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

13

3430.067

potentially counterfeit versions and selling them in Walmart and likely elsewhere, which is certainly expected because the same occurs with all major concert tours and sports teams. Regardless of whether Lady Gaga approved the sale of these items at Walmart, the fact that Lost is being harmed because Lady Gaga's version of the mark is being used, whether by her or others, falls back on her original infringing conduct in creating and selling the clothing bearing "MAYHEM."

If Walmart is jumping on the Lady Gaga "MAYHEM" bandwagon and selling clothing bearing "MAYHEM" without authorization, as Lady Gaga contends, Lost's brand is being further eroded which will force Lost to embark on an expensive enforcement campaign, thanks to Lady Gaga's original infringement. Lost has used MAYHEM® for over three decades and large retailers have never infringed Lost's Mark until now. Now, all of a sudden, when the famous pop-star Lady Gaga uses Lost's Mark, Walmart and likely many other infringers are taking the opportunity to jump in and monetize off the increasing popularity of Lady Gaga's "MAYHEM" branded clothing. Lady Gaga won't be damaged by these counterfeits as she will quickly move to her next project, leaving Lost to be further irreparably harmed. Lost's brand and reputation will be washed away by Lady Gaga, Walmart and potentially other retail behemoths.

Also of note, Lady Gaga claims her merchandise features dark, chaotic imagery, and design. Dkt. 19 at 8. This does not align with Lost's morals and values and adds to the irreparable harm to Lost's reputation as the consuming public continues to be confused. Dkt. 17 at 6.

## V. BALANCE OF EQUITIES AND PUBLIC INTEREST TIPS SHARPLY IN LOST'S FAVOR.

Lady Gaga's Opposition contends that the balance of equities and public interest weigh against an injunction, emphasizing the investment and creative effort behind Lady Gaga's album and tour. However, just because Lady Gaga has ample funds and influence and has chosen to invest them in a tour and clothing line, it does

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

14

3430.067

not mean she gets away with the current and ongoing harm to Lost caused by her use of "MAYHEM." The protection of trademark rights and the prevention of consumer confusion are paramount. The public interest is served by upholding trademark laws and ensuring that consumers are not misled by similar marks in the marketplace.

Lady Gaga claims she was not aware of Lost's mark when she chose her album name, but Lost's ownership of the Mark is public record and further, Lost provided her with actual notice of its ownership in its letter of March 11, 2025 and Lady Gaga still continues to sell merchandise bearing "MAYHEM," and pouring millions of dollars into this project at her own risk. See Dkt. 19 at 21; Dkt. 17 at 7. Lost owns the Mark and Lady Gaga adopted the identical mark on identical and closely related goods trampling on Lost's rights by causing reverse confusion and irreparably damaging Lost's registered MAYHEM brand.

## VI. LOST'S REQUESTED INJUNCTION IS NOT OVERBROAD OR VAGUE.

Finally, Lady Gaga's Opposition claims that Lost's proposed injunction is overbroad and vague, seeking to enjoin all merchandise bearing the word "MAYHEM." Dkt. 19 at 22. Lost clarifies that the injunction is narrowly tailored to address only the infringing use of the "MAYHEM" Mark on clothing and headwear goods in Class 25 that causes reverse consumer confusion and damages Lost's brand reputation.

## VII. CONCLUSION

For the reasons stated above and in Lost's Motion for Preliminary Injunction and all documents in support of the same, Lost respectfully requests that the Court grant its Motion for a Preliminary Injunction to prevent further unauthorized use of the MAYHEM® trademark by Lady Gaga. The injunction is necessary to protect Lost's brand, prevent consumer confusion, and uphold the integrity of trademark law.

/ / /

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

15

3430.067

| | |
|---|---|
| Dated: May 22, 2025 | BREMER WHYTE BROWN & O'MEARA LLP |
| | By: _/s/ Benjamin P._____<br>Keith G. Bremer<br>Benjamin Price<br>Olivia Zorayan<br>Attorneys for Plaintiff<br>LOST INTERNATIONAL, LLC, a<br>California limited liability company |
| Dated:  May 22, 2025 | KNOBBE, MARTENS, OLSON & BEAR, LLP |
| | By: _/s/ Steven J. Nataupsky___<br>Steven J. Nataupsky<br>Attorney for Plaintiff<br>LOST INTERNATIONAL, LLC, a<br>California limited liability company |

BREMER WHYTE BROWN &
O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA  92660
(949) 221-1000

3430.067

16

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record Plaintiff Lost International, LLC, certifies that this brief contains 5,096 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 22, 2025

BREMER WHYTE BROWN & O'MEARA LLP

By: /s/ *Benjamin B.*
Keith G. Bremer
Benjamin Price
Olivia Zorayan
Attorneys for Plaintiff
LOST INTERNATIONAL, LLC, a California limited liability company

Dated: May 22, 2025

KNOBBE, MARTENS, OLSON & BEAR, LLP

By: /s/ Steven J. Nataupsky
Steven J. Nataupsky
Attorney for Plaintiff
LOST INTERNATIONAL, LLC, a California limited liability company

BREMER WHYTE BROWN & O'MEARA LLP
20320 S.W. BIRCH STREET
SECOND FLOOR
NEWPORT BCH, CA 92660
(949) 221-1000

3430.067