GIBSON, DUNN & CRUTCHER LLP
ORIN SNYDER, *pro hac vice*
OSnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.2400
Facsimile: 212.351.6335

HOWARD S. HOGAN, *pro hac vice*
HHogan@gibsondunn.com
1700 M Street, N.W.
Washington, D.C. 20036
Telephone: 202.887.3640
Facsimile: 202.530.9550

ILISSA SAMPLIN, SBN 314018
ISamplin@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7354
Facsimile: 213.229.6354

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOST INTERNATIONAL, LLC, a California limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> STEFANI JOANNE ANGELINA GERMANOTTA, A.K.A. LADY GAGA, an individual; BRAVADO INTERNATIONAL GROUP MERCHANDISING SERVICES, INC., a California corporation; and DOES 1 through 100, inclusive, <br><br> Defendants. | CASE NO. 8:25-cv-00592-FMO-KES <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT** <br><br> Date:      February 19, 2026 <br> Time:      10:00 a.m. <br><br> Action Filed:    March 25, 2025 <br> Trial Date:      August 11, 2026 |

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 19, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 6D of the United States District Court for the Central District of California, located at 350 W 1st Street, Suite 4311 Los Angeles, CA 90012, before the Honorable Fernando M. Olguin, Defendants Stefani Joanne Angelina Germanotta a/k/a Lady Gaga and Bravado International Group Merchandising Services, Inc. will and hereby do move the Court for an order dismissing Plaintiff Lost International, LLC's Second Amended Complaint in its entirety with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6) and/or 12(c).

This Motion is made on the grounds that the Second Amended Complaint fails to state any claim upon which relief can be granted. This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, all pleadings and papers on file in this action, such other matters as the Court may judicially notice or otherwise consider, and such other written or oral argument as may be presented at or before the time this motion is heard and/or taken under submission by the Court.

Pursuant to Local Rule 7-3 and the Court's December 23, 2025 Order (Dkt. 43), and as laid out in the accompanying Samplin Declaration, counsel for Defendants have met and conferred with counsel for Plaintiff regarding the issues raised in this Motion.

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND .............................................................................................. 2

    A.    Lost Is One Among Hundreds of Users of the Term "Mayhem" ............ 2

    B.    Lost Opportunistically Sues Lady Gaga After She Releases Her *Mayhem* Album and Announces a World Tour ........................................ 3

    C.    The Court Denies Lost's Motion for a Preliminary Injunction Because Lost's Claims are "Barred" Under *Rogers v. Grimaldi* ............ 5

    D.    Lost Files a Second Amended Complaint That Repleads the Same Claims This Court Already Determined Fail as a Matter of Law ............. 5

III. LEGAL STANDARD ....................................................................................... 6

IV. ARGUMENT .................................................................................................. 6

    A.    The Court Has Already Concluded that Lost's Lanham Act Claims (Counts 1 and 3) Are "Barred" by *Rogers* ................................................ 7

        1.    Lady Gaga's Use of "Mayhem" is Expressive ............................... 7

        2.    Lost Fails to Allege Facts that Could Satisfy an Exception to *Rogers* ................................................................................................ 8

    B.    *Rogers* Bars Lost's Derivative State and Common Law Claims (Counts 2, 4-5) ..................................................................................... 10

    C.    The Fair Use Doctrine Independently Bars Lost's Claims ..................... 10

    D.    The Doctrine of Aesthetic Functionality Bars Lost's Claims Predicated on the Unregistered, Stylized Version of "Mayhem" ............ 12

    E.    Lost Cannot Plausibly Allege Likelihood of Confusion as a Matter of Law ................................................................................................... 14

        1.    Lost's Claims Fail Because the Parties' Goods and Marketing Channels Are Completely Different ........................... 15

        2.    Lost's Only Other Allegations of Confusion Are Conclusory and Legally Insufficient to Satisfy *Sleekcraft* ............................... 17

    F.    The Court Should Dismiss the SAC Without Leave to Amend ............. 19

V. CONCLUSION ............................................................................................... 19

Gibson, Dunn &
Crutcher LLP

1

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ACI L. Grp. PLLC v. ACI L. Grp. PC*,
   2021 WL 4263692 (D. Ariz. Sept. 20, 2021) ........................................... 17

*Ali v. City of Culver City*,
   2020 WL 14032073 (C.D. Cal. Dec. 9, 2020) ............................................. 9

*AMF Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979) .................................................... 14, 15

*In re Apple iPhone Antitrust Litig.*,
   846 F.3d 313 (9th Cir. 2017) ............................................................ 19

*Arnold v. ABC, Inc.*,
   2007 WL 210330 (S.D.N.Y. Jan. 29, 2007) ............................................. 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................. 6, 9

*Belin v. Starz Ent., LLC*,
   2022 WL 2192999 (C.D. Cal. 2022) .................................................... 7, 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................... 6

*Bell v. Harley Davidson*,
   539 F.Supp.2d 1249 (S.D. Cal. 2008) ............................................... 11, 12

*Betty's Found. for Elimination of Alzheimers Disease v. Trinity Christian
   Ctr. of Santa Ana, Inc.*,
   2022 WL 807391 (9th Cir. Mar. 16, 2022) .............................................. 7, 9

*Brown v. Elec. Arts, Inc.*,
   724 F.3d 1235 (9th Cir. 2013) ............................................................. 8

*Cairns v. Franklin Mint Co.*,
   292 F.3d 1139 (9th Cir. 2002) ........................................................... 10

*Caiz v. Roberts*,
   382 F. Supp. 3d 942 (C.D. Cal. 2019)................................................... 8, 9

*Carter v. Oath Holdings*,
   2018 WL 3067985 (N.D. Cal. June 21, 2018).......................................... 18

*Chaquico v. Freiberg*,
   274 F.Supp.3d 942 (N.D. Cal. 2017)..................................................... 7

*Cleary v. News Corp.*,
   30 F.3d 1255 (9th Cir. 1994) ............................................................ 14

*Cove USA v. No Bad Days Enters.*,
   2022 WL 423399 (C.D. Cal. Jan. 5, 2022)............................................. 13

*Culver v. Unilever United States,*
  2021 WL 10382839 (C.D. Cal. Jan. 21, 2021) .......................................... 2

*Dr. Seuss Enters., L.P. v. ComicMix LLC,*
  256 F.Supp.3d 1099 (S.D. Cal. 2017) .................................................. 10

*Dr. Seuss Enters., L.P. v. ComicMix LLC,*
  983 F.3d 443 (9th Cir. 2020) ........................................................ 9, 10

*Dworkin v. Hustler Magazine,*
  867 F.2d 1188 (9th Cir. 1989) ........................................................... 6

*E.S.S. Ent. 2000, Inc. v. Rock Star Videos,*
  547 F.3d 1095 (9th Cir. 2008) ........................................................... 8

*E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.,*
  444 F.Supp.2d 1012 (C.D. Cal. 2006) ................................................ 10

*Eastland Music Grp. v. Lionsgate Entertainment, Inc.,*
  707 F.3d 869 (7th Cir. 2013) ........................................................... 18

*Erasmus v. Charles W. Perry, M.D., Inc.,*
  2021 WL 4429462 (E.D. Cal. Sept. 27, 2021) ....................................... 4

*Fleischer Studios v. A.V.E.L.A., Inc.,*
  925 F.Supp.2d 1067 (C.D. Cal. 2012) ............................................... 13

*Gadda v. State Bar of Cal.,*
  511 F.3d 933 (9th Cir. 2007) ....................................................... 6, 19

*Global Apogee v. Sugarfina,*
  2018 WL 4945305 (C.D. Cal. Oct. 10, 2018) ...................................... 2, 3

*Haas Automation v. Steiner,*
  750 F.Supp.3d 1107 (C.D. Cal. 2024) ......................................... 8, 9, 19

*Hara v. Netflix, Inc.,*
  146 F.4th 872 (9th Cir. 2025) ...................................................... 7, 9

*Heliotrope Gen., Inc. v. Ford Motor Co.,*
  189 F.3d 971, 981 n.18 (9th Cir. 1999 ................................................. 6

*Hensley Mfg. v. ProPride, Inc.,*
  579 F.3d 603 (6th Cir. 2009) ........................................................... 11

*Image Online Design, Inc. v. Internet Corp. for Assigned Names &
    Numbers,*
  2013 WL 489899 (C.D. Cal. Feb. 7, 2013) .......................................... 15

*Jackson v. Netflix,*
  2020 WL 8028615 (C.D. Cal. Dec. 9, 2020) ......................................... 19

*JBCHoldings NY, LLC v. Pakter,*
  931 F.Supp.2d 514 (S.D.N.Y. 2013) .................................................. 12

iv

*Ketab Corp. v. Mesriani L. Grp.*,
2015 WL 2084469 (C.D. Cal. May 5, 2015) ....................................................15, 17

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
543 U.S. 111 (2004) ...............................................................................................10, 14

*Lammey v. Spectrum Gateway Hotels, LLC*,
2021 WL 4190863 (C.D. Cal. Mar. 22, 2021) ...............................................................4

*LTTB v. Redbubble*,
840 F. App'x 148 (9th Cir. 2021) .................................................................................13

*Mason Tackle Co. v. Victor United, Inc.*,
216 U.S.P.Q. 197 (C.D. Cal. 1982) ..............................................................................16

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*,
290 F.Supp.2d 1083 (C.D. Cal. 2003) ..........................................................................18

*Mattel, Inc. v. MCA Recs., Inc.*,
296 F.3d 894 (9th Cir. 2002) ..........................................................................................7

*McCall's Country Canning, Inc. v. Paula Deen Enters.*,
2010 WL 11508996 (S.D. Cal. Feb. 8, 2010) ...............................................................19

*McGillvary v. Netflix, Inc.*,
2024 WL 3588043 (C.D. Cal. July 30, 2024) .................................................................7

*Multi Time Machine, Inc. v. Amazon.com, Inc.*,
804 F.3d 930 (9th Cir. 2015) ........................................................................................14

*Murray v. Cable Nat'l Broad. Co.*,
86 F.3d 858 (9th Cir. 1996) ....................................................................................14, 15

*Naked Cowboy v. CBS*,
844 F. Supp. 2d 510 (S.D.N.Y. 2012) ..........................................................................11

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ..........................................................................................6

*Packman v. Chicago Trib. Co.*,
267 F.3d 628 (7th Cir. 2001) ........................................................................................11

*Park L. Firm v. Park L. Offs., P.C.*,
2020 WL 3213797 (C.D. Cal. Mar. 23, 2020) .............................................................12

*Punchbowl, Inc. v. AJ Press LLC*,
2024 WL 4005220 (C.D. Cal. Aug. 22, 2024) .............................................................14

*RDF Media Ltd. v. Fox Broad. Co.*,
372 F.Supp.2d 556 (C.D. Cal. 2005) ............................................................................13

*Rogers v. Grimaldi*,
875 F.2d 994 (2d Cir. 1989). .....................................................................................1, 5

*Skydiving Sch., Inc. v. GoJump Am.*,
2025 WL 502491 (9th Cir. Feb. 14, 2025) ...................................................................11

*T-4 Corporation v. McDonald's Corp.*,
  2017 WL 3037422 (D. Mont. July 17, 2017) ......................................................... 18

*Threshold Enters. Ltd. v. Pressed Juicery, Inc.*,
  445 F. Supp. 3d 139 (N.D. Cal. 2020) ...................................................................... 4

*Toho Co. v. Sears, Roebuck & Co.*,
  645 F.2d 788 (9th Cir. 1981) ................................................................. 14, 15, 18

*Tovey v. Nike*,
  2014 WL 3510975 (N.D. Ohio July 10, 2014) ...................................................... 12

*Twentieth Century Fox Television v. Empire Distribution, Inc.*,
  875 F.3d 1192 (9th Cir. 2017) .................................................................................. 8

*United States v. Sutter Health*,
  2021 WL 9182525 (N.D. Cal. Nov. 2, 2021) ......................................................... 19

**Statutes**

15 U.S.C. § 1115(b)(4) ..................................................................................................... 10

**Rules**

Fed. R. Evid. 201 ............................................................................................................... 2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Lost's Second Amended Complaint ("SAC") confirms the fundamental reality of this action: it is not a bona fide trademark case, but a transparent attempt to extract leverage and publicity from the expressive use of a common dictionary word by one of the world's most recognizable artists.  After more than ten months of global album sales, sold-out tours, and massive public exposure to Lady Gaga's Mayhem, the SAC still cannot identify a single confused consumer, a single instance of marketplace deception, or a single concrete injury to Lost.  That absence is not incidental—it is fatal.

The SAC pleads no new facts and advances no new legal theories.  It simply reasserts the same claims this Court has already rejected.  Lost's failure to allege confusion is not a pleading defect that discovery could cure; it reflects the complete lack of any viable claim under the Lanham Act or state law.

Although Lost previously attempted to narrow its requested relief to certain apparel products, the SAC abandons even that restraint.  It now seeks to prohibit Ms. Germanotta from "promot[ing]" the word "Mayhem" altogether, or from using "any other mark that is a counterfeit, copy, simulation, or confusingly similar" to it.  That position is legally untenable.  Trademark law does not grant monopolies over ordinary words, particularly when those words are used in an expressive, non-source-identifying manner.

This Court already held—when denying Lost's motion for a preliminary injunction—that the First Amendment bars Lost's claims under *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989).  Dkt. 41 at 4-6.  That ruling should have ended the case.  The SAC does nothing to confront it.  It alleges no facts suggesting that Lady Gaga or any Defendant misled consumers as to source or sponsorship—because none exist.

The only substantive change in the SAC is the addition of a merchandising entity as a Defendant.  That maneuver cannot and does not salvage Lost's substantive claims.

The First Amendment does not evaporate through joinder, and the constitutional defect identified by the Court applies equally to all Defendants.

This is not a case where discovery might illuminate disputed facts.  It is a case governed entirely by settled law.  Lost fully litigated the governing legal standard, lost, and then re-pleaded the same theory in hopes of a different outcome.  The SAC confirms that further amendment would be futile.

The result is straightforward.  Lost's Lanham Act claims are barred by *Rogers*. Its state-law and common-law claims fail for the same reasons.  Independently, the SAC fails under the doctrines of fair use and aesthetic functionality, and it does not plausibly allege a likelihood of confusion—an essential element of every trademark claim.

Finally, principles of judicial economy and finality compel dismissal with prejudice.  Lost has already been afforded multiple opportunities to state a claim and has failed each time.  Continued litigation would serve no purpose other than to impose unnecessary cost and burden on Defendants and the Court.  The Court is not required to indulge serial pleading where amendment cannot cure fundamental legal defects.  The SAC should therefore be dismissed with prejudice, and this meritless case should be brought to its long-overdue and rightful end.

## II. BACKGROUND

### A.    Lost Is One Among Hundreds of Users of the Term "Mayhem"

The word "mayhem" is a common, dictionary word used to describe "any kind of chaos or disorder."  Samplin Decl. ¶ 2, Ex. A.[1]  It also is commonly registered with the U.S. Patent & Trademark Office ("PTO"), whose records reflect 204 registered or pending trademarks that contain the word "mayhem."  *Id.* ¶ 3.[2]  Examples include the

---

[1] The Court should take judicial notice of the dictionary definition of "mayhem," since "[d]ictionary definitions are a proper subject for judicial notice."  *Global Apogee v. Sugarfina*, 2018 WL 4945305, at *2 (C.D. Cal. Oct. 10, 2018) (granting request for judicial notice of dictionary definition of trademarked word); Fed. R. Evid. 201.

[2] The Court should take judicial notice of the PTO records, which are public and whose existence and contents are not reasonably subject to dispute.  *See Culver v. Unilever United States*, 2021 WL 10382839, at *6 n.16 (C.D. Cal. Jan. 21, 2021) ("Because USPTO trademark registrations are matters of public record, a court can take judicial

*(Cont'd on next page)*

Gibson, Dunn & Crutcher LLP

logo of musician MADAME MAYHEM (Reg. No. 7,465,201) and "tees for and gifts for the edgy and unfiltered" from the brand MADNESS & MAYHEM (Reg. No. 6,701,823). *Id.* ¶ 3, Exs. B-C. Sports-related brands with registered "mayhem" marks include the MACON MAYHEM, a Georgia hockey team that sells "tops as clothing" (Reg. Nos. 7,211,133; 7,233,898); Rawlings Sporting Goods Co. that sells MAYHEM baseball and softball bats (Reg. No. 3,630,076); Feradyne Outdoors, LLC that sells MAYHEM archery arrows (Reg. No. 3,954,647); and jiu jitsu apparel brand MAYHEM ON THE MAT (Reg. Nos. 7,835,128; 7,835,006). *Id.* Car enthusiasts MAYHEM MOTORS have used the term for sweatshirts and t-shirts since 2014 (Reg. No. 5,174,336). *Id.* Others use "MAYHEM" as a standalone term, including Mayhem Music Publishing LLC, (Reg. No. 5,182,349), Gladiator Cornhole Gear (Reg. No. 7,115,040), and Geg Inc. (Reg. No. 7,035,732). *Id.*

Lost, a "surf and lifestyle brand" in San Clemente, California, owns one of those 204 registrations and applications. It says it owns a registration in the word "MAYHEM" in Class 25 for use on 'Beanies; Caps; Jackets; Pants; Sandals; Shorts; T-shirts; Tank tops.'" SAC ¶¶ 13-14. The registration is for the word mark only, without claim to "any particular font, style, size, or color." SAC, Ex. A. Lost says it uses the registered trademark "in connection with surfboards, surf equipment, clothing, accessories, and surf videos." SAC ¶ 13. It also alleges it uses an unregistered, stylized version of "mayhem" on "clothing and accessories" that it sells. *Id.* ¶ 15.

## B.    Lost Opportunistically Sues Lady Gaga After She Releases Her *Mayhem* Album and Announces a World Tour

Stefani Germanotta ("Lady Gaga") is a popular "musician, artist, songwriter, and actress." SAC ¶ 3. Lady Gaga released a studio album titled *Mayhem* in March 2025, announced a worldwide concert tour under the same name (*The Mayhem Ball*), and sold merchandise—including t-shirts and sweatshirts—in connection with promoting the album and tour. SAC ¶¶ 3, 17-20. As the following images from a webpage on Lady

notice of them pursuant to Fed. R. Evid. 201."); *Global Apogee*, 2018 WL 4945305, at *2 (same).

Gaga's website (ladygaga.com) show, her merchandise features dark, chaotic imagery and designs, and nearly always references Lady Gaga or incorporates an image of her into the design.

  

Samplin Decl. ¶ 4, Ex. D at 5-6; *see also id.* ¶ 5, Ex. E.[3]

In a blatant money grab, Lost filed this action against Lady Gaga on March 25, 2025 (Dkt. 1), and its First Amended Complaint ("FAC") on April 15, 2025 (Dkt. 14). Lost alleged that Lady Gaga's use of "mayhem" infringes Lost's purported rights in its registered trademark for "MAYHEM" and unregistered trademark in the stylized version of "mayhem." FAC ¶¶ 15-18, 29; *accord* SAC ¶¶ 17-20, 31. Lost's complaint makes the conclusory assertion that Lady Gaga used the common word "mayhem" "with the intention of … trading on Lost's reputation and goodwill," and her "actions are likely to mislead the public into concluding that her goods originate with or are authorized by Lost." FAC ¶¶ 33-34, 43-44, 57-58; *accord* SAC ¶¶ 35-36, 45-46, 59-60, 65. Lost asserted claims for (1) trademark infringement under the Lanham Act, (2) common law trademark infringement, (3) false designation of origin under the Lanham Act, (4) state law unfair business practices, and (5) common law unfair competition. FAC ¶¶ 21-79; *accord* SAC ¶¶ 23-81.

---

[3] The Court should take judicial notice of the webpages from Lady Gaga's website because Lost alleges that she and Bravado "advertised goods under the [allegedly] infringing trademark on social media and the internet" (SAC ¶ 32), the webpages are publicly accessible, and Lost failed to object to the webpage's authenticity when Lady Gaga submitted it in support of her opposition to Lost's Motion for a Preliminary Injunction. *See* Dkt. 19-10. To the contrary, Lost submitted Exhibit E as an exhibit to its motion for a preliminary injunction. Dkt. 15-4 at 35 (Ex. E). Thus, judicial notice is appropriate. *E.g.*, *Lammey v. Spectrum Gateway Hotels, LLC*, 2021 WL 4190863, at *1 (C.D. Cal. Mar. 22, 2021); *Erasmus v. Charles W. Perry, M.D., Inc.*, 2021 WL 4429462, at *2 (E.D. Cal. Sept. 27, 2021); *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020).

Gibson, Dunn &
Crutcher LLP

**C.    The Court Denies Lost's Motion for a Preliminary Injunction Because Lost's Claims are "Barred" Under *Rogers v. Grimaldi***

On May 8, 2025, more than a month after commencing this lawsuit, Lost filed a motion for a preliminary injunction, seeking to enjoin "Lady Gaga from marketing and selling clothing and headwear that bear the [allegedly] infringing 'MAYHEM' Mark that are likely to cause and have already caused confusion among Lost's customers." Dkt. 15-1 at 2.   Lost argued that "Lady Gaga is improperly and without Lost's permission selling clothing and headwear bearing the Mark with a confusingly similar stylization in support of her new album titled 'Mayhem' and upcoming world tour." *Id.* at 1.

On December 15, 2025, the Court denied Lost's motion because Lost's "claims are barred" under "the test created by *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989)." Dkt. 41 at 4.  As the Court explained, Lost "concedes" that Lady Gaga's "album is an expressive work," and "the *Rogers* test applies not only to the title or body of an expressive work, but also to auxiliary, revenue-generating promotional activities, including the sale or licensing of consumer goods." *Id.* at 4-5.   The Court further explained that Lost "concede[d]" that Lady Gaga's use of "mayhem" has "artistic relevance to the underlying work," and that Lady Gaga's mere use of the asserted trademark failed to show that she "is explicitly misleading consumers as to the source or content" of any challenged work." *Id.* at 5-6.  The Court therefore concluded that Lost "cannot succeed on its claims."  *Id.* at 6.

**D.    Lost Files a Second Amended Complaint That Repleads the Same Claims This Court Already Determined Fail as a Matter of Law**

While its motion for a preliminary injunction was pending, Lost filed a motion for leave to file the SAC.  Dkt. 37.  The SAC does not add any new facts, claims, or legal theories.  Lost sought leave to amend solely to add Bravado as a Defendant because it is "involved in the manufacture, design, and sale of Lady Gaga's Mayhem merchandise." *Id.* at 3.  Lady Gaga opposed Lost's motion, arguing amendment would be futile in light of the Court's ruling that Lost's claims are barred under *Rogers*.  Dkt. 42.

Gibson, Dunn & Crutcher LLP

The Court granted Lost's motion for leave to amend.  Dkt. 43.  The Court explained that, although futility can warrant denial of leave to amend, it is "preferable to address the legal sufficiency of [Lost's] claims in the context of a dispositive motion." *Id.* at 2.  The Court ordered Lost to file its SAC by December 29, 2025, and stated that Defendants may file a motion to dismiss under Federal Rule of Civil Procedure 12 by January 19, 2026.  *Id.* at 3.

Lost filed its SAC on December 29, 2025.  Dkt. 44.  That same day, the parties met and conferred on this Motion to Dismiss.  Samplin Decl. ¶ 8.  The parties were unable to reach a resolution, necessitating this Motion.  *Id.*

### III.  LEGAL STANDARD

A complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it fails to assert a "cognizable legal theory" or contains "insufficient facts … to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).[4]  To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible only where the complaint contains sufficient factual content to allow the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  The "court may consider facts that are contained in materials of which the court may take judicial notice." *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999).  Moreover, a court need not provide leave to amend where, as here, the plaintiff has failed to cure deficiencies after previously receiving leave to amend. *Gadda v. State Bar of Cal.*, 511 F.3d 933, 939 (9th Cir. 2007).

### IV. ARGUMENT

The Court should dismiss the SAC with prejudice because Lost cannot state a cognizable legal theory.  This Court has already concluded that Lost's Lanham Act

---

[4]  Courts apply the same standard to a motion under Rule 12(c). *Dworkin v. Hustler Magazine*, 867 F.2d 1188, 1192 (9th Cir. 1989).

Gibson, Dunn & Crutcher LLP

claims are "barred" by *Rogers*, relying on Lost's concessions and facts contained in its FAC, which is identical in all material respects to the SAC. The Court's analysis of *Rogers* also dooms Lost's state law and common law claims, and thus the entire SAC fails as a matter of law. The SAC independently fails under the fair use doctrine and the doctrine of aesthetic functionality, and because Lost has failed to plausibly allege a likelihood of confusion.

## A.    The Court Has Already Concluded that Lost's Lanham Act Claims (Counts 1 and 3) Are "Barred" by *Rogers*

When a plaintiff seeks to impose trademark liability based on the use of a mark in an expressive work, the Lanham Act yields to the First Amendment under *Rogers v. Grimaldi*. *Mattel, Inc. v. MCA Recs., Inc.*, 296 F.3d 894, 902 (9th Cir. 2002). The *Rogers* analysis proceeds in two steps. First, the court determines whether the challenged use occurs in an artistic or expressive work. *Chaquico v. Freiberg*, 274 F.Supp.3d 942, 950 (N.D. Cal. 2017). If so, the plaintiff bears the burden of pleading facts that satisfy one of two narrow exceptions: (1) that the use has no artistic relevance to the underlying work whatsoever, or (2) that the use *explicitly* misleads consumers as to the source or content of the work. *Belin v. Starz Ent., LLC*, 2022 WL 2192999, at *5 (C.D. Cal. 2022). If the plaintiff cannot meet that burden, the claim fails as a matter of law. *Hara v. Netflix, Inc.*, 146 F.4th 872, 884 (9th Cir. 2025); *Betty's Found. for Elimination of Alzheimers Disease v. Trinity Christian Ctr. of Santa Ana, Inc.*, 2022 WL 807391, at *1 (9th Cir. Mar. 16, 2022). Here, Lady Gaga uses "mayhem" in connection with an artistic, expressive work, and Lost cannot satisfy either exception under *Rogers*.

### 1.    Lady Gaga's Use of "Mayhem" is Expressive

Lost "concedes that [Lady Gaga's] music album is an expressive work." Dkt. 41 at 4. After all, Lost alleges that *Mayhem* is the title of her album and tour (SAC ¶ 3), and courts routinely apply *Rogers* to titles of music albums, films, books, and other expressive works because titles communicate meaning, theme, or subject matter rather than source. *E.g.*, *Mattel*, 296 F.3d at 901 ("[w]e expect a title to describe the underlying work, not to identify the producer"); *McGillvary v. Netflix, Inc.*, 2024 WL 3588043, at

*13 (C.D. Cal. July 30, 2024); *Haas Automation v. Steiner*, 750 F.Supp.3d 1107, 1118 (C.D. Cal. 2024).

Lost has argued that *Rogers* should not apply because she uses "mayhem" in connection with her promotional merchandise, including clothing and headwear. Dkt. 41 at 4. The Court has already rejected this argument, concluding that *Rogers* "applies not only to the title or body of an expressive work, but also to auxiliary, revenue-generating promotional activities, including the sale or license of consumer goods." *Id.* at 4-5 & n.3 (citing *Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875 F.3d 1192, 1196-97 (9th Cir. 2017)). *Rogers* therefore applies.

### 2.    Lost Fails to Allege Facts that Could Satisfy an Exception to *Rogers*

Lost bears the burden of pleading facts that satisfy one of its two narrow exceptions. Dkt. 41 at 4-5. Lost has not come close to doing so, as this Court recognized when it denied Lost's motion for a preliminary injunction. *See id.* at 5-6. Nothing has changed since then except that Lost filed its SAC, which adds no new facts that could overcome *Rogers*.

*First*, the SAC alleges no facts that Defendants' use of "mayhem" "has no artistic relevance to the underlying work whatsoever." *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1239 (9th Cir. 2013). This relevance threshold is intentionally low, requiring only that the use be "above zero." *E.S.S. Ent. 2000, Inc. v. Rock Star Videos*, 547 F.3d 1095, 1100 (9th Cir. 2008). That minimal threshold is easily satisfied here, as the SAC pleads that *Mayhem* is the title of the album and tour (SAC ¶ 3), and Lost "concedes" that Lady Gaga's "album is an expressive work" (Dkt. 41 at 5-6). That is sufficient to establish artistic relevance. *See Brown*, 724 F.3d at 1245 (affirming grant of motion to dismiss); *Caiz v. Roberts*, 382 F. Supp. 3d 942, 949 (C.D. Cal. 2019).

*Second*, the SAC contains no allegations that Defendants "explicitly mislead[] as to the source or content of the work." *Brown*, 724 F.3d at 1239. This prong is deliberately demanding. It is not enough for a plaintiff to allege that consumers might be confused or that the defendant's use resembles the plaintiff's mark. *Id.* at 1245-46.

Rather, the plaintiff must allege facts showing the defendant made an "explicit indication," "overt claim," or "explicit misstatement" identifying the plaintiff as the source or sponsor of the work. *Betty's Found.*, 2022 WL 807391, at *1. (quoting *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020)).

Lost's SAC contains no such allegations.  It does not allege that Lady Gaga or Bravado made any *explicit* statement suggesting that Lost sponsored, endorsed, or was otherwise responsible for the *Mayhem* album, tour, or merchandise.  The album and tour are identified as Lady Gaga's, and Lost has not alleged—and cannot allege—that Lady Gaga or Bravado referenced Lost in any way.  Nothing in the SAC plausibly suggests an affirmative misrepresentation of source.  Lost fails *Rogers*' second prong as a matter of law.[5]

The *only* thing Lost added to the SAC is Bravado as a Defendant.  But *Rogers* applies to all participants in the distribution chain of expressive works, including merchandisers, distributors, and marketing entities.  *Belin*, 2022 WL 2192999, at *6-9 (analyzing *Rogers* as to all defendants without distinguishing between their roles); *Haas*, 750 F.Supp.3d at 1119 (dismissing claims against author and publisher under *Rogers*); *Hara*, 146 F.4th at 874 (dismissing claims against artist and "others connected with the show").[6]

Having done nothing to alter the analysis since this Court denied its motion for a preliminary injunction, Lost's Lanham Act claims remain foreclosed as a matter of law.

---

[5]  To the extent Lost argues that it is entitled to discovery to investigate and support its conclusory claims, such discovery would be nothing more than a fishing expedition, especially since *Rogers* "analyzes facts facially apparent in a defendant's work." *Caiz*, 382 F.Supp.3d at 948; *see also Ali v. City of Culver City*, 2020 WL 14032073, at *5 (C.D. Cal. Dec. 9, 2020) ("Plaintiff cannot use discovery as a fishing expedition to support conclusory claims.") (citing *Iqbal*, 556 U.S. at 679 (filing a complaint "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions")).

[6]  In *Belin*, the plaintiff alleged that G-Unit Brands, like Bravado here, was engaged in the marketing and sale of merchandise for Curtis J. Jackson III aka 50 Cent.  Complaint at 4, *Belin v. Starz Ent., LLC*, (No. 21-cv-09586), 2022 WL 2192999.  The court concluded that *Rogers* barred the plaintiff's claims against all defendants.  *Belin*, 2022 WL 2192999, at *10.  The same conclusion is warranted here.

**B.** *Rogers* **Bars Lost's Derivative State and Common Law Claims (Counts 2, 4-5)**

The First Amendment protections embodied in *Rogers* are not limited to federal trademark claims. Derivative state statutory and common law claims that seek to impose liability for the same expressive use are subject to the same constitutional limits. *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 256 F.Supp.3d 1099, 1114 (S.D. Cal. 2017) ("if claims relying on the exact same factual conduct are validly dismissed under the Lanham Act, they should also be dismissed under California Unfair Competition law"). Because Lost's common law trademark infringement, California Unfair Business Practices, and common law unfair competition claims rest entirely on the same alleged use of "Mayhem," they are also barred by *Rogers*. *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 461 (9th Cir. 2020) (affirming dismissal of common law trademark infringement claims under *Rogers*); *E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*, 444 F.Supp.2d 1012, 1049 (C.D. Cal. 2006), *aff'd*, 547 F.3d 1095, 1101 (9th Cir. 2008) (dismissing plaintiff's California Business and Professions Code § 17200 and common law unfair competition claims as barred by *Rogers v. Grimaldi*).

**C.    The Fair Use Doctrine Independently Bars Lost's Claims**

Lost's claims independently fail because Ms. Germanotta's use of the word "mayhem" is protected fair use. The Lanham Act, 15 U.S.C. § 1115(b)(4), expressly allows fair use of a dictionary term, even if the Court is prepared to accept Lost's conclusory allegations that common use of that term might cause consumer confusion. *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004) ("If any confusion results, that is a risk the plaintiff accepted when it decided to identify its product with a mark that uses a well known descriptive phrase.").

Courts may dismiss trademark claims on fair use grounds where it is clear on the face of the complaint that the defendants (1) did not use the term at issue as a trademark; (2) used the term only to describe their own goods or services; and (3) used the term fairly and in good faith. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir.

2002); *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009).  Each element is apparent on the face of the SAC.

*First*, Lost's allegations establish that Defendants are not using "mayhem" as a source-identifying mark.  The SAC alleges that *Mayhem* is the title of Lady Gaga's album and tour, and that the challenged merchandise is sold in connection with promoting those expressive works.  *E.g.*, SAC ¶¶ 3, 17, 31.  The SAC alleges no facts showing that Defendants use "mayhem" to identify the source of any good.  Rather, the SAC frames Lady Gaga as the source of the album, tour, and related merchandise, confirming that *Mayhem* operates as the name of a creative project rather than a brand identifier.  In fact, nearly all her merchandise references Lady Gaga or incorporates an image of her into the design (Samplin Decl. ¶¶ 4-5, Exs. D-E), "plainly indicating" she is the source.  *Packman v. Chicago Trib. Co.*, 267 F.3d 628, 639–40 (7th Cir. 2001) (finding use of mark on commemorative t-shirts fair where source was prominently identified).  Moreover, there is no dispute that Lady Gaga uses *Mayhem* as the title of only one of her many albums and tours, and courts have held that a term is not source-identifying where a defendant does not use it "exclusively, but instead employ[s] a wide variety of" names or slogans in connection with different projects.  *Bell v. Harley Davidson*, 539 F.Supp.2d 1249, 1258 (S.D. Cal. 2008).  The first fair use element is therefore satisfied.  *See Naked Cowboy v. CBS*, 844 F.Supp.2d 510, 515 (S.D.N.Y. 2012) (dismissing complaint where "CBS used the ['Naked Cowboy'] phrase in an effort to describe the contents of the video clip, not as a mark to identify the source"); *Arnold v. ABC, Inc.*, 2007 WL 210330, *3 (S.D.N.Y. Jan. 29, 2007) (dismissing trademark claim where "Defendants are not using the phrase 'WHAT'S YOUR PROBLEM?' as a mark to … indicate the show's source").

*Second*, the SAC establishes that Defendants use "mayhem" descriptively, in its ordinary sense to describe an expressive project.  "Mayhem" is a common English word that denotes "chaos or disorder" (Samplin Decl. ¶ 2, Ex. A), and no one has the right to bar others from using a word in its dictionary sense.  *See Skydiving Sch., Inc. v. GoJump*

*Am.*, 2025 WL 502491, at *1 (9th Cir. Feb. 14, 2025) (rejecting attempt to claim "an impermissible monopoly over the words that 'most efficiently and accurately describe[d]'" the parties' services).  Courts reject trademark claims premised on a defendant's use of a word "to convey the emotions associated with" a product or work.  *E.g., Tovey v. Nike*, 2014 WL 3510975, at *14 (N.D. Ohio July 10, 2014) (Nike's use of "boom" in advertising campaign was fair use); *Bell*, 539 F.Supp.2d at 1258 (use of "ride hard" was descriptive).

*Third*, the SAC alleges no facts showing Defendants adopted the term "mayhem" in bad faith or with the intent to capitalize on Lost's purported goodwill.  That would be impossible given the number of other registered "Mayhem" marks that identify companies other than Lost.  Samplin Decl. ¶ 3, Exs. B-C; *Park L. Firm v. Park L. Offs., P.C.*, 2020 WL 3213797, at *5 (C.D. Cal. Mar. 23, 2020) (finding good faith where there was "no evidence … Defendants intended to create confusion or capitalize on the [plaintiff's] Marks").  The SAC does not allege Lady Gaga was aware of Lost when she selected the album title.  Nor does it allege any facts showing she sought to trade on Lost's reputation.  To the contrary, the SAC's allegations show that the use of "mayhem" is tied to Lady Gaga's own creative output and identity, which negates any inference of bad faith.  *See Bell*, 539 F.Supp.2d at 1259 (finding good faith where defendant's conduct did not suggest an intent to confuse or exploit the plaintiff's goodwill); *JBCHoldings NY, LLC v. Pakter*, 931 F.Supp.2d 514, 530–31 (S.D.N.Y. 2013) (granting motion to dismiss, noting defendant's "use of her own marks" evidenced good faith).

The SAC demonstrates that Defendants' use of "mayhem" is not source-identifying, is descriptive, and is in good faith.  Lost's Lanham Act, state law, and common law claims are all barred by the fair use doctrine as a matter of law.

### D.    The Doctrine of Aesthetic Functionality Bars Lost's Claims Predicated on the Unregistered, Stylized Version of "Mayhem"

The doctrine of aesthetic functionality provides an additional, independent basis for dismissing each of Lost's claims to the extent they are based on the stylized version of "mayhem."  Lost's case rests on the asserted similarity between its unregistered,

stylized presentation of the word "mayhem" and the display of "mayhem" on certain items of Lady Gaga's merchandise.  SAC ¶¶ 15-20.  But trademark law does not protect decorative features that consumers value for their aesthetic appeal rather than as indicators of source.  Where, as here, a design is favored because it is visually appealing or expressive, and not because it identifies the origin of the goods, the doctrine of aesthetic functionality forecloses infringement as a matter of law.  *See LTTB v. Redbubble*, 840 F. App'x 148, 150-51 (9th Cir. 2021).  Importantly, courts do not allow plaintiffs to use *trademark* law to protect artistic works that are more properly protected as a matter of *copyright* law.  *See RDF Media Ltd. v. Fox Broad. Co.*, 372 F.Supp.2d 556, 564 (C.D. Cal. 2005) (dismissing trademark claims where plaintiff "repackage[ed] its copyright claims [as] trademark causes of action").

Lost's SAC fails to allege Defendants use "mayhem" as a trademark identifying the source of her merchandise.  The pleaded facts establish that the source identifier remains "Lady Gaga," and that the word "mayhem" appears on merchandise as a decorative and expressive reference to a particular album and tour.  SAC ¶¶ 3, 4, 17, 31.  Where a challenged use functions as a "decorative feature" rather than a "source-identifying trademark," such use constitutes aesthetic functionality and is not actionable "as a matter of law."  *Fleischer Studios v. A.V.E.L.A., Inc.*, 925 F.Supp.2d 1067, 1074-75 (C.D. Cal. 2012).

Moreover, nothing in Lost's SAC plausibly alleges that consumers purchase Lost's apparel because the stylized presentation of "mayhem" functions as a source identifier rather than because they desire apparel bearing the word itself.  A plaintiff cannot prevent others from displaying a word or phrase on products absent factual allegations showing that consumers buy the goods "because the marks identify [the plaintiff] as the source of the goods."  *LTTB*, 840 F. App'x at 151.  Allegations regarding Lost's sales volume or longevity of use do not fill that gap.  *See Cove USA v. No Bad Days Enters.*, 2022 WL 423399, at *3 (C.D. Cal. Jan. 5, 2022) (substantial sales do "not

support the contention that consumers purchase the products because they are source-identifying rather than merely aesthetically pleasing").

### E. Lost Cannot Plausibly Allege Likelihood of Confusion as a Matter of Law

Lost's claims independently fail because the SAC does not plausibly allege a likelihood of consumer confusion. *See Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 861 (9th Cir. 1996) (affirming dismissal of trademark infringement complaint for failure to plead a plausible likelihood of confusion); *see also Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) (affirming dismissal of state unfair competition claims and actions pursuant to California Business and Professions Code § 17200 for failure to allege plausible consumer confusion).[7]  The burden rests with the plaintiff to allege facts "show[ing] that the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question." *KP Permanent*, 543 U.S. at 117.  This burden is to show that confusion is "probable, not simply a possibility." *Multi Time Machine, Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 935 (9th Cir. 2015).  Courts typically evaluate likelihood of confusion applying the factors from *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

Lost's theory collapses under its own inconsistency.  In seeking preliminary injunctive relief, Lost framed its case as one of reverse confusion, premised on the notion that Lady Gaga might eclipse Lost's brand through her use of "mayhem." Dkt. 15-1 at 10-17.  The SAC now pleads forward confusion, asserting the preposterous notion that consumers encountering Lady Gaga's album- and tour-branded merchandise would believe it originates with Lost.  *See* SAC ¶¶ 35, 45, 46.  The SAC's conclusory and contradictory allegations are insufficient to survive a motion to dismiss where the lack of likely confusion is obvious and the *Sleekcraft* factors cannot be established as a matter of law.  *See Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 789-90 (9th Cir. 1981)

---

[7] "[T]he same standard for likelihood of confusion is used for both common law trademark infringement and federal trademark infringement." *Punchbowl, Inc. v. AJ Press LLC*, 2024 WL 4005220, at *14 (C.D. Cal. Aug. 22, 2024).

(affirming dismissal of plaintiff's false designation of origin, common law trademark infringement, and state unfair competition claims).

### 1. Lost's Claims Fail Because the Parties' Goods and Marketing Channels Are Completely Different

Lost alleges that the parties' products are "strongly related and/or functionally identical." SAC ¶ 68. But courts dismiss trademark claims where relatedness is pled through conclusory labels rather than facts, and where the pleaded goods are unrelated as a matter of law. *Ketab Corp. v. Mesriani L. Grp.*, 2015 WL 2084469, at *3-4 (C.D. Cal. May 5, 2015).

Here, it is apparent on the face of the SAC that Defendants predominantly use "mayhem" for goods and services (Lady Gaga's album and tour) that are *unrelated* to Lost's surfing apparel. *Compare, e.g.*, SAC ¶¶ 2, 13 (alleging that Lost is a "surf and lifestyle brand" selling surf apparel and accessories associated with surf culture), *with* SAC ¶¶ 3, 17, 31, 43 (alleging that Lady Gaga released a studio album titled Mayhem, announced a worldwide concert tour under the same name, and sold merchandise in connection with promoting that album and tour).

Where parties' goods or services "are unrelated," as they are here, "there is no likelihood of consumer confusion as a matter of law." *Murray*, 86 F.3d at 861; *see Sleekcraft*, 599 F.2d at 348 ("If the goods are totally unrelated, there can be no infringement because confusion is unlikely."). In *Murray*, the court affirmed dismissal where the plaintiff's polling and market research services were unrelated to the defendant's cable television programming, concluding that confusion was implausible as a matter of law. 86 F.3d at 861. Likewise, in *Toho*, the Ninth Circuit held that literary works and toys were unrelated to garbage bags as a matter of law, foreclosing any showing of likelihood of confusion. 645 F.2d at 790-91.

District courts have reached the same conclusion. In *Ketab*, the court dismissed a trademark claim because the pleaded facts established that confusion was unlikely as a matter of law due to the unrelated nature of the parties' services. 2015 WL 2084469, at *3-4. In *Image Online Design, Inc. v. Internet Corp. for Assigned Names & Numbers*,

2013 WL 489899, at *6 (C.D. Cal. Feb. 7, 2013), the court similarly dismissed a trademark claim because it could not infer a likelihood of confusion between mouse pads and backpacks, on the one hand, and internet domain name services, on the other.

Here, Lost relies on a supposed similarity between Lady Gaga's album- and tour-related promotional merchandise and Lost's surf-oriented merchandise in that both sell t-shirts and sweatshirts. SAC ¶¶ 24, 31. Courts routinely reject the idea that all products in the same general category are related. *E.g., Mason Tackle Co. v. Victor United, Inc.*, 216 U.S.P.Q. 197, 203 (C.D. Cal. 1982) ("A prior user of a trademark in one segment of a broad field, such as sporting goods, should not be permitted to" restrict use of the same term "to other segments of the broad field."). Lady Gaga is not in the business of selling surfboards or surf apparel as a brand, and Lost is not in the business of producing music, albums, or concert tours. Lost's SAC does not allege that the parties compete for customers or potential customers. Thus, a consumer encountering merchandise bearing the title of Lady Gaga's album and tour will believe, rightly, that the merchandise is associated with Lady Gaga's expressive works, not with Lost.

The differences between these goods are heightened by the fact that Lost and Lady Gaga sell their respective apparel items through different marketing channels to different sets of consumers. Although Lost makes the conclusory allegation that the parties use "the same channels of commerce" and "the Internet" as a marketing channel, SAC ¶¶ 66, 68, Lost has *directly contradicted* that statement *in this case*. In the SAC, Lost specifically alleges that its goods are sold "in connection with surfboards, surf equipment, clothing, accessories, and surf videos." *Id*. ¶ 13. Lost was even more specific about where it sells these goods in its preliminary injunction submission, admitting that it "***purposefully limits the distribution of MAYHEM® merchandise to core retailers who sell LOST® surfboards and embody the niche culture***." Dkt. 15 at 7 (emphasis added); *see id.* at 6 ("Lost and its 'Mayhem' Mark are" connected "to the niche surf counter-culture which is rooted in standing apart from the mainstream"), 14

(Lost "purposefully limit[s] its distribution to retailers that embody the niche surf counter-culture"), 19 (similar).

Lost explicitly contrasts these statements of its distribution with Defendants' alleged use of its mark. *See* SAC ¶ 17 (alleging that Lady Gaga used the purported mark "by releasing an album entitled 'Mayhem,' launching a tour with that same name, and selling clothing and accessories with that name"); Dkt. 15 at 6-7 (describing the "mainstream" distribution of Lady Gaga's "'Mayhem' campaign" and contrasting Lost's products' "niche" distribution as "standing apart from the mainstream" and Lady Gaga's "distribution of the Mark outside of the surf core community"). Lost's own statements confirm that its products are not marketed to the same consumers or in the same channels. This is the kind of fact that courts often cite in concluding that a trademark complaint fails to state a claim as a matter of law. *E.g.*, *ACI L. Grp. PLLC v. ACI L. Grp. PC*, 2021 WL 4263692, at *17 (D. Ariz. Sept. 20, 2021) ("when the 'identical marketing channels' are simply 'the Internet,' the factor merits little weight.").

## 2. Lost's Only Other Allegations of Confusion Are Conclusory and Legally Insufficient to Satisfy *Sleekcraft*

The SAC's remaining allegations concerning the *Sleekcraft* factors are conclusory and deficient as a matter of law.

- <u>Similarity of the Marks</u>. Lost alleges that Defendants used marks that are "identical," "similar," or "confusingly similar." *E.g.*, SAC ¶ 31 ("substantially similar"), ¶ 45 ("confusingly similar"), ¶ 68 ("similar or identical marks"). Such conclusory, formulaic recitations of this factor are insufficient as a matter of law (*Ketab*, 2015 WL 2084469, at *4), especially since the images of Lady Gaga's merchandise demonstrate that there is no similarity between her use of "mayhem" and Lost's use. *See* Samplin Decl. ¶ 4, Ex. D at 5-6; *see also id.* ¶ 5, Ex. E.

- <u>Intent</u>. The SAC alleges that Defendants "knowingly intend to derive benefit from the reputation of Lost's Mark," that their "purpose" was to "deceive, mislead and confuse customers," and that their conduct was "willful and intentional." See SAC ¶¶ 65, 46, 72. These allegations consist entirely of legal conclusions and do not

plead any facts that would make an inference of such intent plausible. The Ninth Circuit has squarely rejected this type of pleading. *See Toho*, 645 F.2d at 791.

- <u>Weakness of Lost's Mark</u>. Although Lost offers the purely formulaic recitation that its mark is "inherently distinctive" has "acquired distinctiveness" (SAC ¶¶ 29-30), it offers no facts to support that legal conclusion. Lost's *ipse dixit* is not sufficient to overcome the indisputable fact that the PTO has approved hundreds of other registrations that also include the word "mayhem." Samplin Decl. ¶ 3. Lost's formulaic and conclusory allegations of the strength of a trademark are not sufficient. *E.g.*, *T-4 Corporation v. McDonald's Corp.*, 2017 WL 3037422, at *4 (D. Mont. July 17, 2017) (dismissing trademark claim with prejudice because asserted mark was weak given PTO's registration of many similar marks).

- <u>Customer Care</u>. Lost alleges that consumers "are not likely to have sufficient means to differentiate" between the marks. SAC ¶ 67. These are classic legal conclusions unsupported by factual allegations regarding marketplace recognition, channels of commerce, or consumer sophistication. *Carter v. Oath Holdings*, 2018 WL 3067985, at *3 (N.D. Cal. June 21, 2018) ("threadbare recitals of the elements of a cause of action … do not [] survive a motion to dismiss").

- <u>Absence of Actual Confusion</u>. Lost does not allege any facts showing actual confusion, even though it has been ten months since it filed this case. The SAC does not include even one example of a person being confused between Lady Gaga's tour merchandise and Lost's apparel. "[L]ack of evidence about actual confusion after an ample opportunity for confusion can be a powerful indication that the junior trademark does not cause a meaningful likelihood of confusion." *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F.Supp.2d 1083, 1093 (C.D. Cal. 2003); *see Eastland Music Grp. v. Lionsgate Ent., Inc.*, 707 F.3d 869,

871 (7th Cir. 2013) (affirming dismissal where "not a single person has ever contacted" plaintiff in an attempt to obtain defendant's product).

- <u>Likelihood of Expansion</u>.  The SAC contains no allegation that either party plans to expand into the other's line of business.  To the contrary, Lost's preliminary injunction brief makes clear that it has no intent to do so.  Dkt. 15.

In light of what Lost has *not* alleged and what it has *conceded*, the *Sleekcraft* factors cannot plausibly support its claims.  *McCall's Country Canning, Inc. v. Paula Deen Enters.*, 2010 WL 11508996, at *2 (S.D. Cal. Feb. 8, 2010).[8]

## F.    The Court Should Dismiss the SAC Without Leave to Amend

The Court should dismiss the SAC with prejudice because Lost's claims fail as a matter of law and Lost has already had multiple opportunities to amend its complaint.  *See Gadda*, 511 F.3d at 939.  Lost has already amended its complaint twice.  After Lost filed its original Complaint, Lady Gaga's counsel explained why the claims were fundamentally flawed.  Lost responded by filing a FAC, and after the Court denied Lost's motion for a preliminary injunction, Lost obtained leave to file its SAC.  It is now appropriate for the Court to decide the legal sufficiency of Lost's claims in the context of a dispositive motion.  Dkt. 43.  Where, as here, the flaws in plaintiff's theory are obvious on the face of the complaint, any further amendment would serve no purpose, and the Court may properly dismiss this action with prejudice and without leave to amend.  *See Haas*, 750 F.Supp.3d at 1119 (dismissing with prejudice under *Rogers*); *Jackson v. Netflix*, 2020 WL 8028615, at *1016-17 (C.D. Cal. Dec. 9, 2020) (same).

## V. CONCLUSION

The Court should dismiss the SAC with prejudice.

---

[8]  Lost said during the parties' meet and confer that Defendants' Motion is improper because Lady Gaga did not move to dismiss Lost's FAC, but this Court expressly invited Defendants to file a Rule 12 motion in response to the SAC.  Dkt. 43.  And courts regularly consider and decide issues first raised in a subsequent motion.  *See In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 317–18 (9th Cir. 2017); *United States v. Sutter Health*, 2021 WL 9182525, at *3 (N.D. Cal. Nov. 2, 2021) (adjudicating issue first brought in a second motion to dismiss).  Because Defendants could make the same arguments in a motion under Rule 12(c), there is no reason to delay dismissal.

1   Dated:  January 16, 2026

2                                        GIBSON, DUNN & CRUTCHER LLP

3

4                                        By:     _/s/ Ilissa Samplin_____
                                              Orin Snyder
5                                             Howard S. Hogan
                                              Ilissa Samplin
6

7                                        *Attorneys for Defendants*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20

1

**CERTIFICATE OF COMPLIANCE**

2    The undersigned counsel of record certifies that this brief contains 6,940 words,

3    which complies with the word limit of L.R. 11-6.1.

4

5    Dated:  January 16, 2026

6                                          GIBSON, DUNN & CRUTCHER LLP

7

8                                          By:  */s/ Ilissa Samplin*
                                                Orin Snyder
9                                               Howard S. Hogan
                                                Ilissa Samplin
10

11

12                                          *Attorneys for Defendants*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT
5004695824.14