GIBSON, DUNN & CRUTCHER LLP
ORIN SNYDER, *pro hac vice*
OSnyder@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.2400
Facsimile: 212.351.6335

HOWARD S. HOGAN, *pro hac vice*
HHogan@gibsondunn.com
1700 M Street, N.W.
Washington, D.C. 20036
Telephone: 202.887.3640
Facsimile: 202.530.9550

ILISSA SAMPLIN, SBN 314018
ISamplin@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7354
Facsimile: 213.229.6354

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

LOST INTERNATIONAL, LLC, a California limited liability company,

Plaintiff,

v.

STEFANI JOANNE ANGELINA GERMANOTTA, A.K.A. LADY GAGA, an individual; BRAVADO INTERNATIONAL GROUP MERCHANDISING SERVICES, INC., a California corporation; and DOES 1 through 100, inclusive
,

Defendants.

Case No. 8:25-cv-00592-FMO-KES

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES**

Date: October 15, 2026
Time: 10:00 a.m.
Dept: 6D

Action Filed: March 25, 2025
Judgment Entered: August 18, 2026

## NOTICE OF MOTION AND MOTION

TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 1, 2026, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 6D of the above-entitled Court, located at 350 West 1st Street, Los Angeles, California 90012, before the Honorable Fernando M. Olguin, Defendants Stefani Joanne Angelina Germanotta a.k.a. Lady Gaga ("Lady Gaga") and Bravado International Group Merchandising Services, Inc. ("Bravado," and together with Lady Gaga, "Defendants") will and hereby do move the Court for an award of attorneys' fees under Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

As the prevailing parties in this trademark action, Defendants move for an award of $232,484.50, which represents only the fees incurred from December 15, 2025, the date this Court denied Plaintiff Lost International, LLC's ("Lost") motion for a preliminary injunction and held that Lost's claims are "barred" as a matter of law, through the dismissal of this action with prejudice. Although Defendants respectfully submit that they would be entitled to the fees incurred in the entire defense of this action, Defendants have voluntarily limited their request to the post-ruling period.

As required by Local Rule 7-3, counsel for the parties met and conferred by videoconference on September 4, 2026, thoroughly discussed each issue raised in this Motion, and attempted to resolve the Motion in whole or in part. The parties were unable to narrow or resolve their disputes. The entire meet-and-confer process is set forth in the accompanying Declaration of Ilissa Samplin ("Samplin Decl."). See Samplin Decl. ¶¶ 29–31.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Samplin Declaration and the exhibits thereto (including counsel's contemporaneous billing records), the pleadings and

papers on file in this action, any matters of which the Court may take judicial notice, and any evidence or argument presented at or before the time this Motion is heard or taken under submission by the Court.

Dated: September 11, 2026

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Ilissa Samplin*
Orin Snyder
Howard S. Hogan
Ilissa Samplin

*Attorneys for Defendants*

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1
II. BACKGROUND .......... 4
  A. Lost Sues One of the World's Most Famous Artists on the Eve of Her Tour Announcement. .......... 4
  B. The Court Denies a Preliminary Injunction and Holds Lost's Claims "Barred." .......... 5
  C. Lost Ignores the Ruling and Doubles Down. .......... 5
III. ARGUMENT .......... 7
  A. Defendants Are Entitled to Attorneys' Fees Under the Lanham Act. .......... 7
    1. Defendants Are the Prevailing Parties. .......... 7
    2. This Case Was Exceptional the Day It Was Filed: It Was a Publicity Stunt, Not a Bona Fide Trademark Case. .......... 8
      a. Lost's Claims Were Barred as a Matter of Law From the Outset. .......... 8
      b. Lost's Purpose Was Publicity and Leverage, Not the Vindication of Cognizable Rights. .......... 10
    3. Lost Wielded the Deposition of a Touring Artist as a Cudgel to Extract a Settlement. .......... 11
    4. Lost's Refusal to Dismiss After the Court's Clear December 15 Ruling Made This Case Even More Exceptional. .......... 12
    5. Compensation and Deterrence Independently Support an Award. .......... 14
  B. Defendants' Requested Fees Are Reasonable and Conservative. .......... 15
    1. Defendants Seek Only a Fraction of the Fees They Are Entitled To. .......... 15
    2. Defendants Obtained Full Dismissal. .......... 16
    3. Defendants Expended Reasonable Time and Resources. .......... 16
IV. CONCLUSION .......... 18

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Belin v. Starz Ent., LLC*, 2022 WL 2192999 (C.D. Cal. 2022) .... 8

*Breaking Code Silence v. Papciak*, 2022 WL 4241733 (S.D. Cal. Sept. 13, 2022) .... 7

*Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883 (6th Cir. 2004) .... 10, 15

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001) .... 7

*Caiz v. Roberts*, 382 F. Supp. 3d 942 (C.D. Cal. 2019) .... 12

*Carson v. Billings Police Dep't*, 470 F.3d 889 (9th Cir. 2006) .... 18

*Carter v. Caleb Brett LLC*, 757 F.3d 866 (9th Cir. 2014) .... 15

*City of Burlington v. Dague*, 505 U.S. 557 (1992) .... 15

*City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087 (S.D. Cal. 2012) .... 18

*CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419 (2016) .... 8

*Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443 (9th Cir. 2020) .... 8

*E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095 (9th Cir. 2008) .... 8

*Gonzalez v. City of Maywood*, 729 F.3d 1196 (9th Cir. 2013) .... 15

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .... 16

*Herring Networks, Inc. v. Maddow*, 2021 WL 409724 (S.D. Cal. Feb. 5, 2021) .... 17

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) .... 15

*Ketab Corp. v. Mesriani & Assocs., P.C.*,
734 F. App'x 401 (9th Cir. 2018) .......... 9

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
543 U.S. 111 (2004) .......... 9

*Las Vegas Skydiving Adventures LLC v. Groupon, Inc.*,
2022 WL 2664124 (D. Nev. July 11, 2022) .......... 9

*Moreno v. City of Sacramento*,
534 F.3d 1106 (9th Cir. 2008) .......... 17

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) .......... 7

*Pepperdine Univ. v. Netflix, Inc.*,
827 F. Supp. 3d 1316 (C.D. Cal. 2026) .......... 8

*Rogers v. Grimaldi*,
875 F.2d 994 (2d Cir. 1989) .......... 2, 5

*San Diego Comic Convention v. Dan Farr Prods.*,
2019 WL 1599188 (S.D. Cal. Apr. 15, 2019) .......... 14

*Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*,
2017 WL 6059271 (N.D. Cal. Dec. 7, 2017) .......... 9, 16

*Sazerac Co. v. Fetzer Vineyards, Inc.*,
786 F. App'x 662 (9th Cir. 2019) .......... 8, 14

*Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*,
668 F.3d 677 (9th Cir. 2012) .......... 8, 14

*Spalding Lab'ys, Inc. v. Ariz. Biological Control, Inc.*,
2008 WL 2227501 (C.D. Cal. May 29, 2008) .......... 13, 14

*Stewart Surfboards, Inc. v. Disney Book Grp., LLC*,
2011 WL 12877019 (C.D. Cal. May 11, 2011) .......... 8, 12

*Stewart v. U.S. Bancorp*,
297 F.3d 953 (9th Cir. 2002) .......... 8

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
839 F.3d 1179 (9th Cir. 2016) .......... 7, 10, 13, 14

*Teetex LLC v. Zeetex, LLC*,
2022 WL 2439176 (N.D. Cal. July 5, 2022) .......... 9

*ThermoLife Int'l, LLC v. BPI Sports, LLC*,
__ F.4th __, 2026 WL 2409839 (9th Cir. Aug. 18, 2026) .......... 13, 15

*Twentieth Century Fox Television v. Empire Distribution, Inc.*,
875 F.3d 1192 (9th Cir. 2017) .......... 5, 8

*Woodhouse v. U.S. Gov't*,
2022 WL 17222248 (C.D. Cal. Aug. 16, 2022) .......... 18

**Statutes**

15 U.S.C. § 1117 .......................................................................................... 3, 7, 18

**Other Authorities**

Dan Gentile, *Coachella Headliner Faces $100M 'Mayhem' Lawsuit*, SFGate (Mar. 28, 2025), https://www.sfgate.com/sf-culture/article/coachella-headliner-mayhem-lawsuit-20246708.php ......................... 1

Ethan Davis & Michael Ciaramella, *Exclusive: Matt Biolos Explains Why He's Suing Lady Gaga*, Stab Mag. (Mar. 27, 2025), https://stabmag.com/news/matt-biolos-explains-why-hes-suing-lady-gaga/ .......................................................................................... 10

Laylan Connelly, *Surfboard Shaper Matt Biolos Sues Lady Gaga Over Use of 'Mayhem' for New Tour, Apparel*, The Orange County Register (Mar. 27, 2025) .......................................................................................... 11

Michele Gile, *San Clemente Surf Shop Sues Lady Gaga Over "Mayhem" Trademark*, CBS Los Angeles (Mar. 28, 2025), https://www.cbsnews.com/losangeles/news/san-clemente-surf-shop-sues-lady-gaga-over-mayhem-trademark/ ............................................................ 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

A litigant should not be permitted to use the federal courts to launch a publicity stunt masquerading as a lawsuit against a high-profile artist. Nor should it be permitted to wield the machinery of litigation as a device for extracting a settlement that the merits cannot justify. This lawsuit was both. From the day it was filed, it served a dual purpose: to exploit the publicity surrounding Lady Gaga at the peak of her album release and tour announcement, and to make defending the case so burdensome that paying Lost would look cheaper than beating it. Section 35(a) of the Lanham Act exists for precisely this case.

This was never a legitimate lawsuit brought to vindicate cognizable legal rights. It was a publicity stunt. Lost timed this case to capitalize on the fame and popularity of Lady Gaga, the worldwide release of her *Mayhem* album, and her sold-out, critically acclaimed *Mayhem Ball* tour, and it built the case to redirect that spotlight onto Lost's own commercial enterprise.

The record tells the story plainly. Lost filed this action eighteen days after the album's release and one day before the tour's formal announcement. Dkt. 1; Dkt. 41 at 2. It demanded that one of the world's most celebrated artists be barred from "promoting" a common dictionary word. It demanded that she disgorge the profits of a global tour. It demanded punitive damages. And it made those demands as a self-described "niche" surf brand that "purposefully limits" its distribution to "core retailers" "standing *apart* from the mainstream." Dkt. 15-1 at 6-7, 14.

Lost then litigated in the press. Within days of filing, Lost's co-founder, Matt Biolos, gave a series of interviews about the lawsuit. As SFGATE reported, Biolos said that Lost had tried to resolve the dispute amicably before filing suit, and sued only after Lady Gaga's team ignored those efforts. Samplin Decl. Ex. D (Dan Gentile, Coachella Headliner Faces $100M 'Mayhem' Lawsuit, SFGate (Mar. 28, 2025), https://www.sfgate.com/sf-culture/article/coachella-headliner-mayhem-lawsuit-

20246708.php). He assured other reporters that the case was not about money, even as Lost's Complaint demanded no less than $100 million. Dkt. 1, ¶ 111. And he described the injury, in his own words, as mainstream exposure making Lost's products less cool. *See infra* Part III.A.2.b. That is not how a company quietly polices a trademark. It is how a company runs a media campaign.

The merits never materialized, because there were none. In seventeen months of litigation, across three complaints and two merits rulings, Lost did not identify a single confused consumer. It did not identify a single diverted sale. It did not identify a single concrete injury. There was nothing to identify.

This case was therefore exceptional the day it was filed. Lost asked this Court to believe that consumers would mistake stadium-tour merchandise—including merchandise emblazoned with Lady Gaga's name and image—for the products of a San Clemente surf shop. That theory was "barred" by the First Amendment under *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), as this Court held not once but twice. Dkt. 41 at 4-6; Dkt. 61 at 4-6. And the claims failed on multiple independent grounds beyond *Rogers*—including fair use and aesthetic functionality. Dkt. 61 at 6 & n.2.

It became even more exceptional on December 15, 2025. On that date, the Court denied Lost's preliminary-injunction motion and explained, step by step, why the First Amendment bars Lost's claims: Lady Gaga's *Mayhem* album is an expressive work, her merchandise promotes that work, the use of the word "mayhem" is artistically relevant, and Lost identified nothing explicitly misleading about it. Dkt. 41 at 4-6. The Court could not have been clearer: "the Lanham Act does not apply, and [Lost] cannot succeed on its claims for trademark infringement and false designation of origin." *Id.* at 6. That ruling should have ended this case. A plaintiff genuinely seeking to vindicate trademark rights would have acknowledged the truth and dismissed the action voluntarily.

Lost did the opposite. It dug in. One week after the preliminary injunction ruling, Lost served a meet-and-confer letter that did not so much as acknowledge the Court's decision, demanded supplemental discovery responses within seven days, over the

holidays, and threatened motions to compel. Dkt. 51 at 6-7. Two weeks after the ruling, Lost filed a Second Amended Complaint (Dkt. 44) that this Court would later find "virtually identical" to the complaint whose claims the Court had just held barred. Dkt. 61 at 2-3. And Lost noticed the deposition of Lady Gaga personally: a full day, in the middle of her ten-month world tour, with no articulated need. Dkt. 51 at 14. That notice was never a legitimate discovery request. It was a cudgel, served to extract a settlement, not to discover anything. Dkt. 51 at 2, 7-8. Lost then forced Defendants to brief an opposition to amendment, a motion to dismiss, an emergency application to stay discovery, and a reply, recycling at every turn the same legally defective allegations and theories that this Court's clear ruling and controlling Ninth Circuit authority foreclosed.

This is the paradigm of an "exceptional" case under 15 U.S.C. § 1117(a). The asserted claims were legally insufficient from the start. And three additional, independent reasons each compel the same conclusion. *First*, Lost brought this case for publicity: to harvest the attention surrounding Lady Gaga, her album, and her tour, not to protect a mark. *Second*, Lost wielded the machinery of the litigation itself, above all the deposition notice served on a touring artist, as an instrument of settlement pressure rather than a means of proof. *Third*, after the Court's clear December 15 ruling gave Lost unmistakable notice that its claims were deficient, Lost filed an amended complaint that cured nothing and instead doubled down on a specious case.

The equities run entirely in Defendants' favor. Defendants litigated this case the way courts expect parties to litigate. They prevailed on the merits, twice. They offered reasonable accommodations at every turn, including three hours of Lady Gaga's time in the middle of a world tour. They sought emergency relief only when Lost left them no alternative. Lost, by contrast, treated a federal courtroom as a stage, a judicial ruling as an inconvenience, and compulsory process as a bargaining chip. A fee award is how the law restores the balance.

Defendants' request is correspondingly modest. Defendants respectfully submit that they would be entitled to the fees incurred in the entire defense of this action. But

Defendants seek only the fees that Lost's persistence following the preliminary injunction ruling required: $232,484.50. That figure comprises 144.9 attorney hours over the eight months from the December 15 order through dismissal, at the standard rates actually billed to Defendants. It is net of $36,027.50 in write-offs and voluntary exclusions. And it excludes entirely the first nine months of this case: the pleadings, the answer, and the full preliminary-injunction record. Simply put, Defendants prevailed on every claim; this case was exceptional when Lost filed it and became more so the moment Lost chose to ignore this Court's December 15 preliminary injunction order; and a measured award compensates Defendants for that choice while deterring litigants from treating judicial rulings as suggestions.

## II. BACKGROUND

### A. Lost Sues One of the World's Most Famous Artists on the Eve of Her Tour Announcement.

Lady Gaga is one of the most acclaimed recording artists in the world. On March 7, 2025, she released her seventh solo studio album, *Mayhem*; the album cover features her photograph and "is listed as an album by Lady Gaga." Dkt. 41 at 2. On March 26, 2025, she formally announced *The Mayhem Ball*, a worldwide concert tour of 57 shows across three continents that began in Las Vegas on July 16, 2025. *Id.* Merchandise promoting the album and tour, including apparel that references Lady Gaga by name or incorporates her image, had been on sale since January 2025. *Id.*; Dkt. 50 at 3-4.

"Mayhem" is a common dictionary word meaning chaos or disorder, and records of the U.S. Patent and Trademark Office reflect 204 registered or pending marks that contain it. Dkt. 50 at 2-3. Lost owns one of those 204: a Class 25 word mark that it uses on surf apparel. Second Amended Complaint, Dkt. 44 (SAC) ¶¶ 13-14. By its own description, Lost is a San Clemente "surf and lifestyle brand" serving a "niche surf counter-culture which is rooted in standing *apart* from the mainstream," and it "purposefully limits the distribution of MAYHEM® merchandise to core retailers who sell LOST® surfboards." Dkt. 15-1 at 1, 6-7, 14.

On March 25, 2025, eighteen days after the album's release and one day before the tour's formal announcement, Lost sued Lady Gaga. Dkt. 1. Its pleadings demanded an order barring Lady Gaga from "selling, marketing, advertising, [or] promoting" any goods bearing "mayhem" or "any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation" of Lost's marks, together with disgorgement of Defendants' profits and punitive damages. SAC, ¶ 94(a). The original Complaint demanded damages "in an amount proven at trial, no less than $100,000,000." Dkt. 1, ¶ 111. And within days of filing, Lost's co-founder, Matt Biolos, gave a series of press interviews about the lawsuit, speaking to surf outlets and Los Angeles television stations alike. *See infra* Part III.A.2.b (collecting reports).

**B. The Court Denies a Preliminary Injunction and Holds Lost's Claims "Barred."**

On May 8, 2025, Lost moved for a preliminary injunction to stop Lady Gaga from "marketing and selling clothing and headwear" bearing the word "mayhem." Dkt. 17 at 2. On December 15, 2025, the Court denied the motion and explained, step by step, why the First Amendment bars Lost's claims under *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989): Lost conceded that the *Mayhem* album is an expressive work; under *Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875 F.3d 1192, 1196-97 (9th Cir. 2017), *Rogers* protects not only the album but "auxiliary, revenue-generating promotional activities, including the sale or licensing of consumer goods"; the use of "mayhem" is artistically relevant to the work; and Lost identified nothing explicitly misleading about it, because "the use of a mark alone is not enough to satisfy this prong of the *Rogers* test." Dkt. 41 at 4-6. The Court could not have been clearer: "the Lanham Act does not apply, and [Lost] cannot succeed on its claims for trademark infringement and false designation of origin." *Id.* at 6.

**C. Lost Ignores the Ruling and Doubles Down.**

That order gave Lost a choice. It could accept the Court's ruling and end the case, or it could test that ruling through an amended pleading that actually addressed the

defects the Court had identified. Lost did neither. Seven days after the ruling, Lost served a meet-and-confer letter that did not acknowledge the Court's decision, demanded supplemental responses to its 19 interrogatories and 8 document requests "no later than December 29, 2025," and threatened to "file Motions to Compel." Dkt. 51 at 6-7. On December 29, 2025, Lost filed its Second Amended Complaint. Dkt. 44. As this Court has now found, Lost "had two weeks after the court issued its decision denying the PI Motion to prepare its SAC," yet "the allegations in the SAC are virtually identical to those in the FAC," asserting the same five claims. Dkt. 61 at 2-3. The only change was the addition of Bravado, Lady Gaga's merchandising company, which is protected by the same First Amendment principles. Dkt. 50 at 9.

Worse, while its recycled pleading was pending, Lost pressed forward as though the December 15 order did not exist. It insisted on deposing Lady Gaga personally, for a full day, in the middle of an intensive ten-month world tour that Lost knew left no room for it, after she offered three hours on the one date her schedule allowed and Lost identified no subject requiring more. Dkt. 51 at 2, 7-8. It maintained its deposition demands for her manager and for Bravado's Head of Business & Legal Affairs. *Id.* at 7-8. And it threatened motions to compel, forcing Defendants to seek emergency relief staying discovery. Dkt. 51. Defendants opposed Lost's motion for leave to amend as futile, Dkt. 42, and, once the "virtually identical" SAC was filed, moved to dismiss it and to stay discovery on January 16, 2026. Dkts. 50, 51. The Court stayed discovery on January 23, 2026, Dkt. 55, and, after full briefing, dismissed the SAC with prejudice on August 18, 2026. Dkt. 61.

The dismissal order confirms both the emptiness of Lost's claims and the fair warning Lost ignored. The Court held that "*Rogers* bars plaintiff's Lanham Act claims," that Lost's "derivative state statutory and common law claims are also barred," and that "the fair use and aesthetic functionality defenses apply here" as well. Dkt. 61 at 6 & n.2. The Court denied further leave to amend because Lost "has had three opportunities to state viable claims," was on "notice of the deficiencies in its Lanham Act claims through

meet and confers with opposing counsel" and "the Court's Order of December 15, 2025," and still "did not put forth sufficient allegations in the SAC to address those deficiencies." *Id.* at 7. Judgment was entered on August 18, 2026. Dkt. 62. The result of Lost's post-ruling persistence: months of wholly avoidable litigation, a second full round of dispositive briefing, and an outcome identical to the one the Court forecast on December 15.

## III. ARGUMENT

### A. Defendants Are Entitled to Attorneys' Fees Under the Lanham Act.

Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). An "exceptional" case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016) (en banc) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). Courts examine the totality of the circumstances under a preponderance-of-the-evidence standard, guided by a "nonexclusive" list of factors that includes "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1180–81 (cleaned up); *see Octane Fitness*, 572 U.S. at 554 & n.6. Every consideration points in the same direction here.

#### 1. Defendants Are the Prevailing Parties.

A litigant prevails when it secures an enforceable judgment on the merits. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604-05 (2001); *Breaking Code Silence v. Papciak*, 2022 WL 4241733, at *2 (S.D. Cal. Sept. 13, 2022). The Court dismissed every one of Lost's claims with prejudice and without leave to amend, and judgment has been entered for Defendants. Dkt. 61 at 8; Dkt. 62. A dismissal for failure to state a claim "is a 'judgment on the merits.'"

*Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002); *see CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419, 431 (2016) (a defendant prevails whenever "the plaintiff's challenge is rebuffed, irrespective of the precise reason"). Defendants are the prevailing parties.

**2. This Case Was Exceptional the Day It Was Filed: It Was a Publicity Stunt, Not a Bona Fide Trademark Case.**

***a. Lost's Claims Were Barred as a Matter of Law From the Outset.***

An action is exceptional under the Lanham Act where the plaintiff has "no reasonable or legal basis to believe in success on the merits." *Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*, 668 F.3d 677, 687 (9th Cir. 2012). So too where a case has "exceptionally low merit." *Sazerac Co. v. Fetzer Vineyards, Inc.*, 786 F. App'x 662, 665 (9th Cir. 2019). Lost's case did not merely have low merit; it had none, for four independent reasons, each apparent from the face of Lost's own pleadings.

*First*, the First Amendment barred every claim. Lost conceded that *Mayhem* is an expressive work and that the use of the word is artistically relevant to it, Dkt. 41 at 5-6, which left Lost needing to plead an "'explicit indication,' 'overt claim,' or 'explicit misstatement'" that Lost was the source of Lady Gaga's work, a "high bar" Lost never approached. *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020); Dkt. 61 at 5-6. Ninth Circuit law extending *Rogers* to promotional merchandise was settled before Lost filed. *Twentieth Century Fox*, 875 F.3d at 1196-97. Courts in this district routinely dismiss trademark claims targeting expressive works and their promotional merchandise at the pleading stage. *E.g.*, *Pepperdine Univ. v. Netflix, Inc.*, 827 F. Supp. 3d 1316 (C.D. Cal. 2026); *Belin v. Starz Ent., LLC*, 2022 WL 2192999, at *5-10 (C.D. Cal. 2022); *Stewart Surfboards, Inc. v. Disney Book Grp., LLC*, 2011 WL 12877019, at *6-8 (C.D. Cal. May 11, 2011). And Lost's derivative state-law claims were barred for the same reasons. *E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1101 (9th Cir. 2008).

*Second* and *third*, as this Court concluded, "the fair use and aesthetic functionality defenses apply here" as well. Dkt. 61 at 6 n.2. Lost sought to monopolize a common dictionary word, one of 204 "mayhem" marks on the federal register, used descriptively to evoke the chaotic period in Ms. Germanotta's life that the music on the album captures. Dkt. 50 at 2-4, 10-14; *see KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004) ("If any confusion results, that is a risk the plaintiff accepted when it decided to identify its product with a mark that uses a well known descriptive phrase.").

*Fourth*, Lost could never plausibly allege confusion. The premise that consumers would mistake stadium-tour merchandise—including merchandise bearing Lady Gaga's name and image—for the products of a self-described "niche" surf label was implausible on its face. Lost's own filings made it worse. The SAC pleaded forward confusion; Lost's opposition briefing abandoned that theory for an unpleaded reverse-confusion theory; and Lost never reconciled the two. Dkt. 57 at 2, 9. Through seventeen months of massive public exposure, including a global album release and a sold-out worldwide tour, Lost never identified one confused consumer. Where, as here, a plaintiff's theory of harm depends on confusion, that absence is "critical." *Sazerac Co. v. Fetzer Vineyards, Inc.*, 2017 WL 6059271, at *6 (N.D. Cal. Dec. 7, 2017); *see Las Vegas Skydiving Adventures LLC v. Groupon, Inc.*, 2022 WL 2664124, at *1–2 (D. Nev. July 11, 2022).

Courts award fees against plaintiffs who press claims far stronger than these, including claims that made it all the way to trial. *See, e.g.*, *Sazerac,* 2017 WL 6059271, at *8 (awarding fees even where plaintiff "presented enough evidence to largely defeat [defendant's] motion for summary judgment, allowing the case to proceed to trial"); *Ketab Corp. v. Mesriani & Assocs., P.C.*, 734 F. App'x 401, 411 (9th Cir. 2018) (awarding fees where plaintiff was "unable to produce evidence of infringement *during the bench trial*" (emphasis added)); *Teetex LLC v. Zeetex, LLC*, 2022 WL 2439176, at *2 (N.D. Cal. July 5, 2022) (awarding fees where plaintiff's claims survived a motion

to dismiss). Lost's claims were untenable on the day they were filed. This Court said so twice.

***b. Lost's Purpose Was Publicity and Leverage, Not the Vindication of Cognizable Rights.***

"[M]otivation" is an express consideration under *Octane Fitness* and *SunEarth*. *SunEarth*, 839 F.3d at 1181. The record here admits of one conclusion: this suit was filed to capture the spotlight trained on Lady Gaga, not to protect a mark.

Start with the timing. Lady Gaga's *Mayhem* merchandise went on sale in January 2025. Dkt. 41 at 2. Lost did not sue then. It sued on March 25, 2025, eighteen days after the album debuted worldwide and one day before the formal announcement of *The Mayhem Ball*, when the audience for a lawsuit against Lady Gaga would be at its peak. Dkt. 1; Dkt. 41 at 2. A plaintiff genuinely worried about confusion moves quickly to stop it. A plaintiff seeking attention waits for the cameras.

The relief Lost demanded tells the same story. A brand that "purposefully limits" its distribution to "niche" surf retailers, Dkt. 15-1 at 19, demanded the profits of a 57-show global tour, punitive damages, and an injunction against "promoting" a dictionary word or anything "confusingly similar" to it. SAC, Prayer ¶¶ 88-89, 94(a). Lost never articulated a damages theory, never identified a diverted sale, and never explained how a niche surf label is injured when a pop icon titles an album *Mayhem*. The demands were untethered to any injury because injury was never the point. Attention and leverage were. Courts award fees where litigation is "undertaken and prosecuted in a fashion that would . . . encourage nuisance settlement." *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 896 (6th Cir. 2004).

Lost was not shy about the audience it sought. Its co-founder, Matt Biolos, whose nickname Lost alleges is "Mayhem," SAC ¶ 2, took the dispute straight to the media, giving a series of interviews within days of filing. *See, e.g.*, Samplin Decl. Ex. B (Ethan Davis & Michael Ciaramella, *Exclusive: Matt Biolos Explains Why He's Suing Lady Gaga*, Stab Mag. (Mar. 27, 2025), https://stabmag.com/news/matt-biolos-explains-

why-hes-suing-lady-gaga/); Samplin Decl. Ex. C (Laylan Connelly, *Surfboard Shaper Matt Biolos Sues Lady Gaga Over Use of 'Mayhem' for New Tour, Apparel*, The Orange County Register (Mar. 27, 2025), https://www.ocregister.com/2025/03/27/surfboard-shaper-matt-biolos-sues-lady-gaga-over-use-of-mayhem-for-new-tour-apparel/); Samplin Decl. Ex. E (Michele Gile, *San Clemente Surf Shop Sues Lady Gaga Over "Mayhem" Trademark*, CBS Los Angeles (Mar. 28, 2025), https://www.cbsnews.com/losangeles/news/san-clemente-surf-shop-sues-lady-gaga-over-mayhem-trademark/). He told reporters that Lost had tried to resolve the dispute amicably before filing suit, and sued only after Lady Gaga's team ignored those efforts. Whatever the accuracy of that account, its venue is the point. He assured one outlet that the suit "isn't about squeezing Gaga for a cut" and that he did not need the money, even as Lost's Complaint demanded damages of "no less than $100,000,000." Stab Mag., *supra*; Dkt. 1, ¶ 111. And he described the real grievance in his own words: Lady Gaga's fans wearing Lost's word on mainstream merchandise would make Lost's products "not as cool and not as renegade." CBS Los Angeles, *supra*. Coolness is not a Lanham Act injury, and a damages demand publicly disavowed by the plaintiff's own principal is not a damages theory. It is leverage. A plaintiff quietly policing a trademark communicates with the alleged infringer. A plaintiff seeking attention gives interviews. The press strategy, like the timing of the complaint and the relief it demanded, confirms that publicity was a feature of this litigation, not a byproduct.

**3. Lost Wielded the Deposition of a Touring Artist as a Cudgel to Extract a Settlement.**

Lost's conduct of discovery removes any doubt. Lost served nothing for the first two months after the scheduling order was issued. Dkt. 30 (scheduling order issued July 28, 2025); Dkt. 51-1 at 1 (Plaintiff served first set of discovery requests on September 15, 2025). Urgency arrived only when leverage required it. And the discovery Lost did pursue was aimed at the celebrity rather than the claims: demands to identify "each and

every" person involved in "selecting" the album's title, and, above all, the demand for a full-day deposition of Lady Gaga herself. Dkt. 51 at 5-8.

That deposition demand was not a legitimate discovery request. Lost knew Lady Gaga was in the middle of an intensive ten-month, three-continent world tour, because her counsel told Lost exactly that and offered three hours on the one date her schedule allowed. Dkt. 51 at 2, 7. Lost refused, proclaiming itself "entitled to the full day deposition" while never identifying a single subject that required a full day. *Id.* at 7. And it maintained the demand even after this Court held Lost's claims barred, forcing Defendants to seek emergency relief. *Id.* at i-ii, 7-8. Nor could any testimony have mattered: *Rogers* is applied to "facts facially apparent in a defendant's work," *Caiz v. Roberts*, 382 F. Supp. 3d 942, 948 (C.D. Cal. 2019), so nothing Lady Gaga could say at a deposition would supply the "explicit misstatement" missing from Lost's pleadings. *See Stewart Surfboards*, 2011 WL 12877019, at *6. A full-day deposition of a world-famous artist at the height of a grueling international tour, in service of claims already held barred, had one function: to make continued litigation so disruptive that settlement became cheaper than vindication. The burden was the point. That is not the vindication of trademark rights; it is the use of federal process as a pressure campaign, and it made this case exceptional from the start.

**4. Lost's Refusal to Dismiss After the Court's Clear December 15 Ruling Made This Case Even More Exceptional.**

Defendants need not persuade the Court that this case was exceptional from its inception, although it was. Even assuming Lost's federal registration could supply an objectively reasonable basis to test an infringement theory at the outset, Section 1117(a) does not freeze the reasonableness inquiry on the day a complaint is filed. Once this Court identified the dispositive defects in Lost's theory and gave Lost a full opportunity to cure them, Lost's decision to refile the same allegations, and to litigate aggressively in the meantime, made this case "stand[] out from others" in "the unreasonable manner

in which the case was litigated." *SunEarth*, 839 F.3d at 1180. That post-ruling period is the only period for which Defendants seek fees.

The December 15 order gave Lost a choice: accept the Court's ruling or test it through an amended pleading that actually addressed the defects the Court had identified. Lost did neither. It filed a Second Amended Complaint that this Court found "virtually identical" to the FAC, over Defendants' opposition explaining, in real time, that the amendment would be futile. Dkt. 61 at 2-3; Dkt. 42. It pressed forward with discovery as though the order did not exist: the December 22 letter that ignored the ruling, demanded supplementation within seven days over the holidays, and threatened motions to compel; the deposition campaign trained on Lady Gaga herself, maintained even after the ruling, when no testimony could bear on claims already held barred and the demand's only remaining value was its burden; the refusal of every proposed accommodation. Dkt. 51 at i-ii, 5-8. It forced a second full round of dispositive briefing: an opposition to amendment, a motion to dismiss, an emergency stay application, and a reply. Then, in its opposition, Lost misstated the governing *Rogers* test and swapped its pleaded confusion theory for one it had never alleged. Dkt. 57 at 1-2, 5-6, 9. The endpoint was exactly where December 15 began: dismissal, this time with prejudice, because Lost "has had three opportunities to state viable claims," was on notice from "meet and confers" and "the Court's Order of December 15, 2025," and cured nothing. Dkt. 61 at 7.

The law squarely supports a fee award tailored to that conduct. Two weeks ago, in a decision issued the same day as this Court's dismissal order, the Ninth Circuit affirmed a Lanham Act fee award where the plaintiff's "persistence in litigating . . . in light of the repeated dismissals of its same claims, for the same reasons . . . illustrated a pattern of pursuing a meritless litigation strategy." *ThermoLife Int'l, LLC v. BPI Sports, LLC*, __ F.4th __, 2026 WL 2409839, at *5 (9th Cir. Aug. 18, 2026); *see also Spalding Lab'ys, Inc. v. Ariz. Biological Control, Inc.*, 2008 WL 2227501, at *1–2 (C.D. Cal. May 29, 2008) (awarding fees where the plaintiff "turned a blind eye to the Court's

warnings" noting that plaintiff "had the responsibility to consider its case and determine whether it had merit, not only upon filing suit, but throughout the entire litigation process"). The Ninth Circuit has likewise recognized that an adverse preliminary-injunction ruling can put a plaintiff on notice of a fatal defect, rendering its continued prosecution of the case objectively unreasonable without any showing of bad faith. *Secalt*, 668 F.3d at 687. And the Ninth Circuit has expressly approved the precise remedy Defendants request here: a fee award limited to the period after the litigation crossed into objective unreasonableness. *Sazerac*, 786 F. App'x at 665-66 (affirming award of the fees incurred after the point at which it became "objectively unreasonable" for the plaintiff to proceed); *accord San Diego Comic Convention v. Dan Farr Prods.*, 2019 WL 1599188, at *4-6 (S.D. Cal. Apr. 15, 2019) (party that "repeated, re-argued, and recycled arguments already briefed . . . and ruled on by the Court" litigated in an objectively unreasonable manner), *rev'd in part on other grounds*, 807 F. App'x 674 (9th Cir. 2020); *Spalding Lab'ys*, 2008 WL 2227501, at *2.

A plaintiff that receives a clear judicial ruling that its claims are barred, and responds by refiling the same claims and escalating discovery against the artist it sued for attention in the first place, has left zealous advocacy behind. That is obstinacy. Every dollar Defendants spent after December 15 was spent because Lost preferred the leverage of a pending lawsuit to the judgment of this Court. That choice is what transformed an exceptional case into an extraordinary one, and it is precisely the conduct Section 1117(a) exists to remedy.

**5. Compensation and Deterrence Independently Support an Award.**

The final *Octane* considerations, compensation and deterrence, seal the analysis. *SunEarth*, 839 F.3d at 1181. Every dollar Defendants seek was spent ending a case this Court had already held barred: but for Lost's refusal to accept the December 15 ruling, none of these fees would have been incurred. The compensatory case for an award could not be more direct.

Deterrence matters just as much. If a failed publicity suit costs its architect nothing, the strategy succeeds even in defeat: the filing generates headlines, the discovery generates pressure on the artist, and dismissal arrives long after the news cycle has moved on. High-profile artists are natural targets for such suits precisely because their fame guarantees coverage and their schedules magnify the burden of litigation. The judicial system should not be available as a stage for publicity stunts masquerading as lawsuits, or as a lever for extracting settlements untethered to the merits. A fee award here tells future litigants that expressive works are not hostage to opportunistic claims over dictionary words, and that judicial rulings are not suggestions. *See ThermoLife*, 2026 WL 2409839, at *5; *Bridgeport Music*, 371 F.3d at 896.

**B. Defendants' Requested Fees Are Reasonable and Conservative.**

Reasonable attorneys' fees are based on the "lodestar" amount, the product of the number of hours the prevailing party reasonably expended multiplied by a reasonable hourly fee. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). Although the lodestar is presumptively reasonable (*id.*), courts consider some or all of the Johnson-Kerr factors. *See Carter v. Caleb Brett LLC*, 757 F.3d 866, 868–69 (9th Cir. 2014). The relevant factors include: the amount involved and the results obtained; the time and labor required; the skill requisite to perform the legal service properly; the experience, reputation, and ability of the attorneys; the customary fee; and awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). The analysis "begin[s] with the billing records the prevailing party has submitted." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Those records, submitted with the Samplin Declaration, document a request that is modest by any measure.

**1. Defendants Seek Only a Fraction of the Fees They Are Entitled To.**

Because this case was exceptional from its inception, Defendants would be justified in seeking the fees incurred across the entire defense, from the complaint through judgment. Defendants instead seek $232,484.50: the fees actually billed for the work that Lost's post-notice persistence required. Samplin Decl. ¶¶ 15–23, Ex. A. The

request comprises just 144.9 attorney hours over eight months and reflects three layers of voluntary reduction. *First*, Defendants seek nothing for the first nine months of this case: the pleadings, the answer, and the entire preliminary-injunction phase. *Second*, Defendants exclude all paralegal and case-administration time recorded during the fee period. *Third*, Defendants have written off or excluded $33,256.50 in additional attorney time, including internal-update entries, entries related to requests for comment from the media, duplicative document finalization time, and out of an abundance of caution, a number of time entries where multiple timekeepers reviewed the same document in parallel. Samplin Decl. ¶¶ 18–19. This self-limited request tracks the tailored, post-notice awards the Ninth Circuit has affirmed. *See Sazerac*, 2017 WL 6059271, at *11. Lost is not being asked to pay for its lawsuit. It is being asked to pay only for its refusal to accept this Court's answer to it.

**2. Defendants Obtained Full Dismissal.**

"[T]he most critical factor" in assessing a fee request "is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). Defendants obtained everything: dismissal of every claim, with prejudice, without leave to amend, and entry of judgment. Dkt. 61 at 7-8. And the stakes were substantial. Lost demanded disgorgement of the profits of a 57-show worldwide tour, punitive damages, and a sweeping injunction against one of the world's most prominent artists. SAC, ¶¶ 88-89, 94. Total victory in a case of this profile amply supports the lodestar.

**3. Defendants Expended Reasonable Time and Resources.**

The 144.9 hours for which Defendants seek fees produced four substantive briefs and the related meet-and-confer record in a compressed period: the opposition to Lost's motion for leave to amend, Dkt. 42; the motion to dismiss the SAC, which the Court granted in full, Dkt. 50; the *ex parte* application to stay discovery, which the Court granted, Dkt. 51; and the reply in support of dismissal, Dkt. 57, together with the correspondence made necessary by Lost's post-ruling discovery campaign. The staffing was lean and bottom-heavy: nearly two-thirds of the hours were billed by the two most

junior lawyers on the team, and the three supervising partners collectively billed 17.4 hours, 12 percent of the total, providing targeted strategic direction and final review. Samplin Decl. ¶¶ 22. The fees billed during the period, by timekeeper, are as follows:

| **Timekeeper** | **Hours** | **Fees Sought** |
|---|---|---|
| Orin Snyder | 2.5 | $8,247.50 |
| Howard S. Hogan | 10.4 | $25,404.00 |
| Ilissa Samplin | 4.5 | $10,362.50 |
| Shaun A. Mathur | 33.7 | $65,137.50 |
| Jeffrey P. Warren | 88.0 | $115,619.00 |
| Cassidy Q. Lewis | 5.8 | $7,714.00 |
| **Total** | **144.9** | **$232,484.50** |

Courts "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Here, 144.9 hours to put a permanent end to a five-count federal action demanding tour profits and punitive damages from a global artist is the opposite of excess.

This was a high-profile case against one of the most recognizable artists in the world, with commensurate reputational stakes, and Defendants reasonably engaged preeminent trial and intellectual-property counsel to defend it. *See Herring Networks, Inc. v. Maddow*, 2021 WL 409724, at *7 (S.D. Cal. Feb. 5, 2021) (defendants facing litigation with "a high degree of publicity" have "a great incentive to hire the most experienced and qualified counsel available," and finding the retention of Gibson Dunn reasonable on that basis). Orin Snyder, who co-chairs Gibson Dunn's global Trials Practice Group and serves on its Executive Committee, is one of the nation's leading

trial lawyers, with decades of experience representing artists and entertainment companies in their most consequential disputes. Howard Hogan has been named among "The World's Leading Trademark Professionals" by *World Trademark Review* and has authored multiple treatises on intellectual property law. Ilissa Samplin is a leading intellectual-property and entertainment trial lawyer in Los Angeles, the venue of this dispute. Samplin Decl. ¶¶ 9–10 & Exs. F–H. Their targeted oversight, amounting to 12 percent of the hours, allowed associates to carry the laboring oar at substantially lower rates.

The rates are counsel's standard rates, actually billed to sophisticated clients. "That a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his clients are part of the market." *Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006). The blended effective rate of the request, approximately $1,604 per hour, reflects its associate-weighted staffing, and courts in this district have repeatedly found the rates of Gibson Dunn and its peer firms reasonable for comparable high-stakes work. *See Woodhouse v. U.S. Gov't*, 2022 WL 17222248, at *1 (C.D. Cal. Aug. 16, 2022) (approving Gibson Dunn partner rates and noting that "other judges have found Gibson Dunn's hourly rates to be reasonable"). Samplin Decl. ¶¶ 22.

Finally, Defendants may recover for all of the work performed during the fee period, because Lost's state-law claims were "so intertwined" with its Lanham Act claims "that it is impossible to differentiate between work done" on each. *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1109 (S.D. Cal. 2012). All five of Lost's claims rested on the identical alleged conduct, and the Court dismissed the state-law claims as derivative of the federal claims. Dkt. 61 at 6 & n.2.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court find this case exceptional under 15 U.S.C. § 1117(a) and award Defendants $232,484.50 in attorneys' fees, together with the fees incurred in connection with this Motion, to be

documented in Defendants' supplemental submission. The award will compensate Defendants for litigation that never should have continued past December 15, 2025. And it will confirm that the judicial system may not be used to launch publicity stunts masquerading as lawsuits against high-profile artists, or to extract settlements that the merits cannot justify.

Dated: September 11, 2026

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Ilissa Samplin*
Orin Snyder
Howard S. Hogan
Ilissa Samplin

*Attorneys for Defendants*

**Certificate of Compliance**

The undersigned, counsel of record for Defendants, certifies that this brief contains approximately 6,333 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 11, 2026

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Ilissa Samplin*
Orin Snyder
Howard S. Hogan
Ilissa Samplin

*Attorneys for Defendants*